# Nos. 14-2545/14-2719

*(Docket Number in District Court: 12-cv-06653)*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

RENTOKIL-INITIAL PENSION SCHEME, Individually and on Behalf of All Others Similarly Situated,

Plaintiff-Appellant/Cross-Appellee,

vs.

CITIGROUP INC., SANFORD I. WEILL, CHARLES O. PRINCE, III, ROBERT E. RUBIN and VIKRAM PANDIT,

Defendants-Appellees/Cross-Appellants.

Appeal from the United States District Court
for the Southern District of New York

## PLAINTIFF-APPELLANT/CROSS-APPELLEE'S OPENING BRIEF AND SPECIAL APPENDIX

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC ALAN ISAACSON
MARK SOLOMON
AMANDA FRAME
JENNIFER N. CARINGAL
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058

Counsel for Plaintiff-Appellant/Cross-Appellee Rentokil-Initial Pension Scheme

979479_1

*Rentokil-Initial Pension Scheme, et al. v. Citigroup Inc., et. al.*
Second Circuit Nos. 14-2545 / 14-2719

## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant/Cross-Appellee Rentokil-Initial Pension Scheme does not

issue stock, and is not a subsidiary of or otherwise controlled by a parent corporation.

979479_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................1

II. JURISDICTIONAL STATEMENT ................................................5

III. ISSUES PRESENTED ............................................................6

IV. STATEMENT OF THE CASE ....................................................8

    A. Nature of the Case ...................................................8

    B. Course of Proceedings.............................................9

    C. Disposition Below ...................................................12

V. STATEMENT OF FACTS .......................................................18

    A. Citi's Significant Involvement with the U.S. Residential
        Mortgage Market .................................................18

    B. Citi Issues Securities with False and Misleading Offering
        Documents that Failed to Disclose Its True Exposure to U.S.
        Subprime Mortgage-Related Assets.......................20

    C. Citi's Misconduct Is Revealed as the U.S. Real Estate Market
        Collapses ...........................................................22

    D. Citi Accepts Emergency Funds from the U.S. Federal
        Government in the Biggest Federal Bailout to Date; the Euro
        Note Securities Plummet in Value .........................23

    E. Citi Litigates Dozens of Civil Actions in New York ..........24

VI. STANDARD OF REVIEW .......................................................27

VII. SUMMARY OF THE ARGUMENT.............................................28

VIII. ARGUMENT.......................................................................31

**Page**

A.    The District Court Erred in Granting Dismissal Based on *Forum Non Conveniens*....................................................................31

B.    The District Court Erred in Failing to Give Plaintiff's Forum Choice Substantial Deference ............................................32

    1.    The District Court Failed to Give Proper Weight to Defendants' Residence in the Chosen Forum...........................35

    2.    The District Court Ignored the Profound *Bona Fide* Connections to the United States and New York ....................38

C.    The Private and Public Interest Factors Do Not Tilt Heavily in Favor of Litigating in the United Kingdom .........................................42

    1.    The District Court Improperly Relieved Defendants of Their Burden to Show that Private-Interest Factors Strongly Favor the United Kingdom ........................................44

    2.    Public Interest Factors: New York and the United States Have Strong Interests in this Litigation ....................................49

D.    The District Court Erred in Finding the United Kingdom Provides an Adequate Alternative Forum ............................................53

IX.    CONCLUSION............................................................................59

- iii -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abdullahi v. Pfizer, Inc.*,
    562 F.3d 163 (2d Cir. 2009) .........................................................................43

*Aguinda v. Texaco, Inc.*,
    303 F.3d 470 (2d Cir. 2002) .........................................................................53

*Albert v. Carovano*,
    851 F.2d 561 (2d Cir. 1988) ....................................................................55, 58

*Alfadda v. Fenn*,
    159 F.3d 41 (2d Cir. 1998) ...........................................................................58

*Anderson v. Rochester-Genesee Reg'l Transp. Auth.*,
    337 F.3d 201 (2d Cir. 2003) .........................................................................26

*Armco Inc. v. North Atl. Ins. Co.*,
    68 F. Supp. 2d 330 (S.D.N.Y. 1999) ............................................................50

*Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*,
    273 F.3d 241 (2d Cir. 2001) ....................................................................53, 58

*Bigio v. Coca-Cola Co.*,
    448 F.3d 176 (2d Cir. 2006) .........................................................................27

*Blanco v. Banco Indus. De Venezuela, S.A.*,
    997 F.2d 974 (2d Cir. 1993) .........................................................................53

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
    145 F.3d 481 (2d Cir. 1998) .........................................................................51

*Calavo Growers of Ca. v. Belgium*,
    632 F.2d 963 (2d Cir. 1980). ........................................................................52

*DiFederico v. Marriott Int'l, Inc.*,
    714 F.3d 796 (4th Cir. 2013) ........................................................................50

**Page**

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002) ..........................................................45

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
  375 F. Supp. 2d 257 (S.D.N.Y. 2005). ........................................52

*Figueiredo Ferraz e Engenharia de Projeto Ltda v.*
  *Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011) ...............................................3, 43, 45

*Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Canada*,
  703 F.3d 488 (10th Cir. 2012) ....................................................58

*Galustian v. Peter*,
  591 F.3d 724 (4th Cir. 2010) ......................................................38

*Gross v. British Broad. Corp.*,
  386 F.3d 224 (2d Cir. 2004) ...........................................31, 45, 52

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 508 (1947) ....................................................*passim*

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
  228 F. Supp. 2d 348 (S.D.N.Y. 2002) ........................................40

*In re Boesky Sec. Litig.*,
  882 F. Supp. 1371 (S.D.N.Y. 1995) ...........................................55

*In re Bridgestone/Firestone, Inc.*,
  420 F.3d 702 (7th Cir. 2005) ......................................................26

*Iragorri v.United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ..................................................*passim*

*Irish Nat'l Ins. Co. v. Aer Lingus Teoranta*,
  739 F.2d 90 (2d Cir. 1984) .........................................................27

- v -

**Page**

*Jota v. Texaco Inc.*,
   157 F.3d 153 (2d Cir. 1998) ........................................................................53

*Kirch v. Liberty Media Corp.*,
   No. 04 Civ. 667 (NRB), 2006 U.S. Dist. LEXIS 82175
   (S.D.N.Y. Nov. 8, 2006)..............................................................................56

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)......................................................................................31

*Leetsch v. Freedman*,
   260 F.3d 1100 (9th Cir. 2001) .....................................................................53

*Lony v. E. I. Du Pont de Nemours & Co.*,
   886 F.2d 628 (3d Cir. 1989) ..................................................................36, 46

*Manu Int'l, S.A. v. Avon Products, Inc.*,
   641 F.2d 62 (2d Cir. 1981) ............................................................35, 42, 51

*Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) .......................................................................42

*Munafo v. Metro. Transp. Auth.*,
   381 F.3d 99 (2d Cir. 2004). .........................................................................28

*Norex Petroleum, Ltd. v. Access Indus.*,
   416 F.3d 146 (2d Cir. 2005) ..................................................................passim

*Peregrine Myanmar v. Segal*,
   89 F.3d 41 (2d Cir. 1996) ............................................................................50

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)................................................................................passim

*Pollux Holding, Ltd. v. Chase Manhattan Bank*,
   329 F.3d 64 (2d Cir. 2003) ....................................................................passim

**Page**

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ..............................................................53

*Reid-Walen v. Hansen*,
    933 F.2d 1390 (8th Cir. 1991) ..................................................38, 49

*Rentokil-Initial Pension Scheme v. Citigroup, Inc.*,
    No. 12 Civ. 6653, 2014 U.S. Dist. LEXIS 14997
    (S.D.N.Y. Feb. 6, 2014)...............................................................10

*Rusyniak v. Gensini*,
    629 F. Supp. 2d 203 (N.D.N.Y. 2009) .........................................58

*Schertenleib v. Traum*,
    589 F.2d 1156 (2d Cir. 1978) ................................................29, 35

*Siegelman v. Cunard White Star, Ltd.*,
    221 F.2d 189 (2d Cir. 1955) ..................................................55, 58

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007). ................................................................2, 31

*Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*,
    725 F. Supp. 2d 438 (S.D.N.Y. 2010),
    *aff'd*, 716 F.3d 296 (2d Cir. 2013).........................................35, 52

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    162 F.3d 724 (2d Cir. 1998) ........................................................28

*United States v. Louisiana*,
    363 U.S. 1 (1960)........................................................................26

*United States v. Pink*,
    315 U.S. 203 (1942).....................................................................26

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) ..........................................................31

Page

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
    §1291 ...............................................................................................6
    §1332(a) .........................................................................................5
    §1332(c)(1) ....................................................................................6

Federal Rules of Civil Procedure
    Rule 59(e) ..............................................................................11, 17

Luxembourg Civil Code
    Article 1142 ..................................................................................9
    Article 1382 ..................................................................................9
    Article 1383 ..................................................................................9
    Article 1384 ..................................................................................9

979479_1

# GLOSSARY OF ACRONYMS

CDOs:       Collaterized Debt Obligations

FCIC:       Financial Crisis Inquiry Commission

GAAP:       Generally Accepted Accounting Principles

IFRS:       International Financial Reporting Standards

RMBSs:      Residential Mortgage Backed Securities

SIVs:       Structured Investment Vehicles

979479_1

## I.    INTRODUCTION

This is a case about defendant CitiGroup Inc.'s ("Citi" or the "Company") corporate financial statements and filings with the U.S. Securities and Exchange Commission ("SEC"), which investor Rentokil-Initial Pension Scheme ("Rentokil") contends were materially false and misleading.  Rentokil contends that the New York bank's offering documents for 21 offerings of securities called Euro Notes were misleading because they incorporated by reference Citi's misleading corporate financial statements and SEC filings, all of which were prepared and approved by defendants at Citi's corporate headquarters in New York.  JA232(¶27); JA241-JA242(¶¶57-58, 60).[1]

The issue raised on appeal is whether the district court erred in dismissing this case about Citi's corporate financial statements and SEC filings for *forum non conveniens*.  Rentokil challenges the district court's conclusion that New York is an inconvenient forum in which to litigate claims against New York defendants that focus on whether a New York bank's corporate financial statements and SEC filings were materially false and misleading.  The defendant bank is headquartered in New

---

[1]    This Brief designates Joint Appendix materials as "JA__," and Special Appendix Materials as "SA__."  Entries on the district court's Civil Docket are designated "Dkt.__."

979479_1

York, where all individual defendants also reside, and the alleged misstatements come from corporate financial statements that they prepared in New York and filed with the SEC. JA227(¶12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶57-73); JA251-JA277(¶¶79-148). Defendants themselves have had to admit that substantial evidence is located in New York, JA097-JA098, where Citi has litigated other civil suits involving violations of U.S. GAAP in the same financial statements.[2] *See infra* at 24-25 nn. 3-5. Rentokil respectfully submits that New York is an appropriate forum to litigate the New York bank's corporate financial statements' veracity.

The Supreme Court emphasizes that "the central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). And unless litigation in the chosen forum would be truly inconvenient, "plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A defendant invoking *forum non conveniens* thus "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). And this Court accordingly holds that a plaintiff's forum choice is entitled to "substantial deference," with the

---

[2]    GAAP governs financial statements filed with the U.S. SEC while IFRS applies to financial statements filed in countries in the European Union, including Luxembourg and the United Kingdom. *See* http://www.ifrs.com/updates/aicpa/ifrs_faq.html#q3 (last visited October 24, 2014).

- 2 -

deference owed to a foreign plaintiff to be considered on a sliding scale that assesses whether there are reasons to doubt the strong presumption of convenience. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70-73 (2d Cir. 2001) (en banc). The district court's *forum non conveniens* analysis must also ensure that an adequate alternative forum exists, and that the balance of both private and public interests involved with adjudicating the matter either in plaintiff's chosen forum or in the proposed alternative forum tilts "strongly" in favor of dismissal. *See Figueiredo Ferraz e Engenharia de Projeto Ltda v. Republic of Peru*, 665 F.3d 384, 406 (2d Cir. 2011); *Iragorri*, 274 F.3d at 73.

Against this backdrop of important *forum non conveniens* principles, the district court plainly erred in holding that it is inconvenient for New York defendants to litigate in their own home forum the veracity of a New York bank's corporate financial statements and SEC filings. The district court erred at the outset in holding that Rentokil's choice of forum is entitled to less than substantial deference, ignoring this Court's precedents holding that deference must be evaluated on a sliding scale – according significant deference when the plaintiff files in defendants' home forum where relevant evidence is likely to be located. Despite this case's profound *bona fide* connections to New York and the United States, including defendants' residence in the chosen forum – which this Court holds is a "strong indicator" of convenience –

- 3 -

and the fact that defendants generated the financial statements at issue in New York, the district court held that Rentokil was entitled to minimal deference in its forum choice.  SA007-SA008.

Given the district court's failure to afford adequate deference to plaintiff's choice, that consideration is dispositive.  Yet the district court further erred in balancing private interest and public interest factors.  Though it was required to find that both private and public interests **strongly** favor litigating in the proposed alternative forum before it could dismiss the case, the district court concluded that the private-interest factors involved in litigating between the United Kingdom and New York were essentially neutral or "in equipoise," with the exception of one factor – the attendance of witnesses – that it determined "tilts **slightly** in favor of the United Kingdom."  SA009-SA010 (emphasis added).

With respect to "public interest" factors, the district court held that it would be "unfair to impose jury duty" on New York residents to determine whether a New York bank's corporate financial statements and SEC filings were misleading, and that "the United Kingdom's interest in having 'localized controversies decided at home,' supports that forum as preferable in this case."  SA012 (citation omitted).  To this it added "the avoidance of U.S. Courts determining issues of foreign law" as a policy consideration that "militates squarely against further litigation in New York."  *Id*.  Yet

- 4 -

it never found that either the private interest or public interest factors strongly favored a foreign forum.

As set forth below, Rentokil contends this is plainly insufficient to overcome the initial presumption in favor of plaintiff's forum choice. Defendants failed to meet their burden of showing that litigating in New York, where they reside and where they generated disputed financial statements subject to U.S. GAAP to be filed with the SEC, would be truly inconvenient. The district court also erred in declining to condition its dismissal on defendants' clear consent to personal jurisdiction in the U.K. as to all claims plaintiff is entitled to bring or to accept the date of plaintiff's initial filing for statute-of-limitation purposes – apparently ignoring that an adequate alternative forum does not exist unless all defendants are amenable to service there or if a statute of limitations bars the bringing of the case in that forum.

The district court's *forum non conveniens* dismissal should be reversed.

## II.   JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action which was initially filed asserting claims under U.K. law (and then amended to assert claims under the Luxembourg Civil Code) pursuant to 28 U.S.C. §1332(a), because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between plaintiff Rentokil, a pension fund for Rentokil Initial plc, a business-services firm with

- 5 -

its principal place of business in the United Kingdom, and individual defendants Sanford I. Weill, Charles O. Prince, III, Robert E. Rubin and Vikram Pandit, each of whom is a U.S. citizen and resident of New York, as well as defendant Citi, a Delaware financial-services corporation with its principal place of business in New York. *See* 28 U.S.C. §1332(c)(1) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business").

On February 6, 2014, the district court entered its order dismissing the action on the ground of *forum non conveniens*, and on June 9, 2014, subsequently denied plaintiff's Rule 59(e) motion to amend the judgment. On July 7, 2014, plaintiff filed a timely notice of appeal, affording this Court jurisdiction under 28 U.S.C. §1291.

## III. ISSUES PRESENTED

1. Where a foreign plaintiff's forum choice is entitled to substantial deference if there are *bona fide* connections to the forum, did the district court err in giving minimal deference to Rentokil's decision to litigate the veracity of a New York bank's corporate financial statements and SEC filings in the forum where those allegedly misleading documents were generated and where all of the defendants reside?

- 6 -

2.     Where the district court was required to find that both the private and public-interest factors tilt heavily in favor of dismissal, did the district court err by entering a *forum non conveniens* dismissal after holding that the private-interest factors tilt but "slightly in favor" of litigating in the United Kingdom, on the assumption that "United Kingdom-based witnesses are the most obviously relevant fact witnesses" to whether a New York bank's corporate financial statements, which defendants generated in New York and filed with the U.S. SEC, were misleading and in violation of U.S. accounting rules?

3.     Did the district court err in holding that public-interest factors supported dismissal because it would be "unfair" to ask a New York jury to determine whether a New York bank's corporate financial statements and SEC filings were misleading, and because allowing a New York jury to make such a determination would impinge upon "the United Kingdom's interest in having localized controversies decided at home"?

4.     Did the district court err in finding that the courts of the United Kingdom provide an adequate alternative forum because they recognize claims for deceit and misrepresentation, and then ruling that defendants need not clearly consent to personal jurisdiction or to the timeliness of those claims?

- 7 -

## IV. STATEMENT OF THE CASE

### A. Nature of the Case

Plaintiff Rentokil brought the underlying class action to recover billions of dollars of losses suffered by investors who purchased medium-term Euro Notes issued and sold by defendant Citi between October 12, 2005, and February 25, 2009, by means of offering documents that Rentokil contends were misleading because they incorporated by reference the New York bank's corporate financial statements, which defendants generated in New York for filing with the U.S. SEC, and which violated the U.S. accounting rules to which such filings are subject. JA227-JA228(¶12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶58-73); JA251-JA277(¶¶79-148). The Euro Notes were issued in a series of 21 offerings, with some of the Euro Notes trading on the Brussels Stock Exchange in Luxembourg, and others trading on stock exchanges in London and Copenhagen. JA241-JA242(¶¶57-58).

This is an appeal from the district court's *forum non conveniens* dismissal holding that New York is an inconvenient forum to litigate claims turning upon whether a New York bank's corporate financial statements and SEC filings were in fact misleading because they failed properly to disclose and account for Citi's exposure to risky assets consisting of U.S.-backed loans and U.S. mortgages. These

- 8 -

documents were prepared and approved by defendants in New York, with the financial statements purportedly prepared according to U.S. accounting rules.

### B. Course of Proceedings

On August 30, 2012, Rentokil filed its initial class-action complaint in the Southern District of New York asserting violation of Section 90 of the United Kingdom's Financial Services and Markets Act 2000 ("FSMA"). JA061-JA062(¶¶160-165).

Defendants moved to dismiss based on *forum non conveniens* and failure to state a claim, asserting that U.K. law does not apply to plaintiff's misrepresentation claims and suggesting that Luxembourg law instead controls. JA078-JA080; *see also* JA088(¶32) (Declaration of Martin Moore, Q.C.) ("It would seem to me that the structure of the Prospectus Directive is to make Luxembourg law . . . the relevant law in respect of such claims.").

Given defendants' contention that Luxembourg law should control, plaintiff obligingly filed on June 7, 2013, a First Amended Class Action Complaint ("Complaint") asserting claims under Article 1142 of the Luxembourg Civil Code, governing contract liability, and Articles 1382, 1383 and 1384 of the Luxembourg Civil Code, governing tort liability. JA288-JA292(¶¶186-211).

- 9 -

Defendants then moved to dismiss the Complaint, again asserting *forum non conveniens* and failure to state a claim. Abandoning their assertion that Luxembourg law applies, defendants' new dismissal motion asserted that English law properly controls plaintiff's claims. Dkt. 25 at 1-2, 8-12.

On February 6, 2014, the district court, Judge Sidney H. Stein of the Southern District of New York presiding, granted defendants' motion to dismiss the Complaint under *forum non conveniens*, SA001-SA013, *Rentokil-Initial Pension Scheme v. Citigroup, Inc*., No. 12 Civ. 6653, 2014 U.S. Dist. LEXIS 14997, at *22 (S.D.N.Y. Feb. 6, 2014), after finding that the U.K. is an adequate forum because it "recognizes such causes of action as deceit, negligent misrepresentation in contract, negligent misrepresentation in tort, and breach of contract – claims that are the subject matter of this dispute." SA008-SA009. The district court conditioned its dismissal on the individual defendants' consent to jurisdiction, asking them to "notify the Court in writing within seven days of the entry of this Opinion and Order whether [Weill, Prince, Rubin, and Pandit] consent to jurisdiction over them by the courts of the United Kingdom." SA008n.2.

Seven days later, on February 13, 2014, the individual defendants submitted a letter consenting to jurisdiction ***only*** "with respect to the claims asserted by plaintiff in the [First Amended] Complaint" (*i.e*., claims under Luxembourg law that defendants

- 10 -

insist does not apply), JA301, while expressly reserving all defenses other than personal jurisdiction:

> Defendants consent to the exercise of personal jurisdiction over each of them by the courts of [] England and Wales with respect to the claims asserted by plaintiff in the [First Amended] Complaint. This consent is without prejudice to or waiver of any defenses to such claims other than personal jurisdiction.

JA301-JA302.

Believing this February 13th letter fulfilled its condition concerning defendants' consent to personal jurisdiction in the United Kingdom, the district court issued an endorsed order on February 18, 2014, dismissing for *forum non conveniens*. SA014-SA015.

Out of concern that defendants – who have changed positions regarding what law applies to plaintiff's claims – would challenge personal jurisdiction over them as to any additional causes of action arising from the facts of the Complaint, and possibly even challenge the timeliness of a U.K. filing, plaintiff sought relief under Fed. R. Civ. P. 59(e), asking the district court to amend its final order of dismissal to include the additional conditions that (1) defendants consent to jurisdiction over them in the United Kingdom for all claims and causes of action of the facts alleged in the Complaint; and (2) defendants agree that all applicable statutes of limitations would

- 11 -

be deemed tolled as of the date of the first filing of this action, August 30, 2012, and until the termination of any appellate proceedings in this matter.  Dkts. 47-48.

In response, defendants stated in a footnote that they would consent to jurisdiction as to only those legal theories ***permitted by*** the courts of the United Kingdom: "the individual defendants understand their consent to personal jurisdiction to extend to legal theories based on the same facts permitted by the courts of England and Wales."  JA304n.1.

The district court denied plaintiff's motion on June 9, 2014.  SA016-SA022. Plaintiff timely filed its notice of appeal on July 7, 2014.  JA305-JA308.  Defendants filed a cross appeal on July 21, 2014.  JA309-JA310.

### C.    Disposition Below

Citi is headquartered in New York, all of the individual defendants reside in the forum, the corporate financial statements at issue in this action emanated from New York to be filed with the U.S. SEC and were misleading because they violated U.S. accounting rules in light of the character of Citi's holdings of U.S. loans and U.S. mortgages.  JA227-JA228(¶12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶58-73); JA251-JA277(¶¶79-148).    As   the   district   court   acknowledged,   "those misrepresentations were part of the offering documents for the 21 Euro Notes

- 12 -

underlying this action, because Citigroup incorporated its misleading disclosures to the SEC into those offering documents."  SA002 (citing JA232(¶27), JA241(¶57)).

Although Rentokil obligingly filed in the defendants' home court where Citi is headquartered and the individual defendants reside, and although "the parties agree that 'a substantial amount of evidence related to plaintiff's claim is located in New York,'" SA007 (citation omitted), where other litigation focusing on the same financial statements has been centered, the district court's February 6, 2014, opinion and order holds that New York is an inconvenient forum for New Yorkers to litigate the veracity of the New York bank's corporate financial statements and SEC filings. According to the district court, "the U.K. courts represent an adequate forum for this dispute" and "the United Kingdom has a greater interest in the dispute than does New York." SA001.

Because the Rentokil pension fund is a foreign citizen, the district court held that it "begins with a disadvantage in the deference analysis." SA007. Rentokil's decision to litigate the truthfulness of the New York bank's corporate financial statements and SEC filings in defendants' own home forum, where all "parties agree that 'a substantial amount of evidence related to plaintiff's claim is located,'" *id.* (citation omitted), was entitled to only "minimal" deference, the district court held, because the "investments that form the basis for this lawsuit are securities listed on

- 13 -

foreign stock exchanges, governed by foreign legislation, and subject to regulation by foreign authorities," *id*. – never mind that the claims arise only because the securities' offering documents incorporated by reference the New York bank's SEC filings and corporate financial statements that misrepresented Citi's exposure to loans backed by U.S. residential mortgages and violated U.S. accounting rules (U.S. GAAP), and that Citi has previously litigated other cases in New York involving the same financial statements and U.S. GAAP violations.  JA225-JA228(¶¶9-12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶57-73); JA251-JA277(¶¶79-148); JA097-JA098.

Having accorded "minimal deference" to Rentokil's choice of defendants' home forum to litigate the veracity of their corporate financial statements, the district court determined that "[t]he balance of interests tilts in favor of the United Kingdom as the preferred forum in this dispute."  SA009.

In its analysis of the  private-interests factors, the district court held that while most of the factors were either "in equipoise" or "roughly equal" between New York and the United Kingdom, SA009-SA011, the "subpoena and attendance of witnesses" factor "tilts slightly in favor of the United Kingdom."  SA010.  Although the case centers on a New York bank's corporate financial statements, generated in New York for filing with the SEC, the district court somehow concluded that the "relevant personnel at Rentokil and Citigroup are located in the United Kingdom and elsewhere

- 14 -

in Europe," and that "United Kingdom-based witnesses are the most obviously relevant fact witnesses." *Id.* The district court did not explain how it might be that Citi employees responsible for corporate financial statements generated in New York, and filed with the SEC, are likely to be "located in the United Kingdom and elsewhere in Europe." *Id.*

With respect to the public-interest factors, the district court held that New York has a "minimal interest" in the litigation, "limited to the fact that defendants reside here," SA012, but that "[t]he United Kingdom's interest is far greater," because Rentokil "is located in the United Kingdom," which is "a member of the European Union, whose European Parliament and European Council enacted the 'Prospectus Directive' that govern the relevant securities in this case." *Id.* The district court deemed it "unfair" to ask a New York jury to determine whether a New York bank's corporate financial statements were misleading, and with Citi Euro Notes trading on the stock exchange in Luxembourg, London and Copenhagen, contrary to "the United Kingdom's interest in having 'localized controversies decided at home.'" *Id.* (quoting *Gilbert*, 330 U.S. at 508-09). The district court further held that because "no party believes U.S. law applies" to Rentokil's claims, a public-policy interest in avoiding determining issues of either U.K. or Luxembourg law "militates squarely against further litigation in New York." *Id.*

- 15 -

Apparently recognizing that no adequate alternative forum exists unless all defendants are amenable to service there, the district court held that the courts of the United Kingdom would offer an adequate alternative forum for plaintiff to litigate its claims conditional upon the individual defendants' consent to personal jurisdiction over them there. SA008n.2. Defendants, who reside in New York, subsequently consented to jurisdiction in the U.K. courts with respect to *only* "the claims asserted by plaintiff in the Complaint," which all arise under Luxembourg law – a law they insist cannot apply. JA301-JA302. This prompted Rentokil to seek relief under Rule 59(e), asking the district court to further condition its dismissal on (1) defendants' consent to jurisdiction as to *all* causes of action that might be asserted on the basis of the facts alleged in the Complaint; and (2) defendants' agreement to waive all applicable statutes of limitations that were not available when plaintiff first filed suit in August 2012. Dkts. 47-48. Plaintiff noted that a misrepresentation claim under English law might be time-barred in the alternative forum. Dkt. 48 at 4.

Opposing these conditions, defendants said in a footnote that they would consent to jurisdiction as to only those legal theories "***permitted by*** the courts of England and Wales," JA304n.1 (emphasis added), but refused to accept the date of plaintiff's New York filing for statute-of-limitation purposes. JA304-JA305.

- 16 -

The district court nonetheless held that the additional conditions Rentokil sought were unnecessary. Its June 9, 2014, order denying plaintiff's Rule 59(e) motion to amend the judgment asserts that defendants' vague consent to jurisdiction "ameliorates any lingering concern of a jurisdictional obstacle to the litigation of plaintiff's claims – asserted and potential – in the courts of the United Kingdom." SA020. Although the Complaint alleges that defendants misrepresented to investors the true extent of Citi's exposure to toxic subprime assets, and initially asserted claims under English law – amending only to suit defendants' preference for Luxembourg law – and although the district court had found the U.K. an adequate forum precisely because the U.K. recognizes claims for deceit and misrepresentation, "claims that are the subject matter of this dispute," SA009, the district court held that it need not condition its *forum non conveniens* dismissal on defendants' agreement to waive statute-of-limitations defenses because plaintiff "has never alleged a cause of action for misrepresentation" under English law. SA021. According to the district court, "[a]ny fear that 'a statute of limitations bars the bringing of the case in' the United Kingdom ignores the causes of action that plaintiff actually alleged in this case" under Luxembourg law, and "[n]othing in the record suggests that the claims alleged in this litigation are time-barred." SA021-SA022 (citation omitted).

- 17 -

## V.    STATEMENT OF FACTS

Defendant Citi, a massive financial-services company headquartered in New York, was the world's largest bank as measured by assets until 2008, when as a direct result of its misconduct related to U.S. RMBSs, Citi recorded $58 billion of losses and received nearly half a trillion dollars in government funds in order to avoid collapse. JA226(¶39); JA227-JA228(¶12); JA249-JA250(¶74(b)); *see* http://nymag.com/daily/intelligencer/2011/03/citibank_received_more_bailout.html (last visited October 24, 2014).

This case concerns the New York bank's corporate financial statements, which defendants prepared in New York for filing with the SEC under U.S. accounting rules, but which ultimately were incorporated by reference in offering documents for Citi Euro Notes – which, as it happens, trade not in the United States but (depending on the specific offering) on stock exchanges of Luxembourg, London or Copenhagen. JA227-JA228(¶12); JA231-JA232(¶¶22-27); JA241-JA242(¶¶57-58).

### A.    Citi's Significant Involvement with the U.S. Residential Mortgage Market

Beginning in the early 2000s, Citi significantly increased its exposure to U.S. residential subprime mortgages as both a mortgage originator and securitizer.  By

2007, Citi had become the largest U.S. subprime mortgage lender and its portfolio of U.S. residential loans totaled approximately $213 billion. JA223(¶4); JA244(¶67).

By expanding its U.S. residential-loan originations, Citi generated a pool of mortgages it could then bundle into RMBSs, which it in turn used to create CDOs, both of which it then sold to Company-sponsored SIVs, which are off-balance-sheet special purpose entities that use the funds from short-term debt investments to purchase long-term assets. JA239(¶49); JA240-JA241(¶54). Citi's earnings growth in its lending and banking businesses prospered greatly as Citi was able to generate revenue multiple times through this arrangement. JA239(¶49); JA240(¶53). Indeed, Citi received hundreds of millions of dollars in fees in connection with the creation and management of its SIVs. JA240(¶53). And by 2007, Citi became the world's largest underwriter of mortgage CDOs, JA239(¶50), issuing $49.3 billion worth of securities in that year alone, a portion of which were sold to foreign investors such as Rentokil.

Because Citi's CDOs and SIVs had underlying assets that consisted of U.S. sub-prime residential mortgages, Citi was particularly vulnerable to the U.S. housing market. For example, one of Citi's own analysts concluded that Citi's CDO losses would be minor if housing prices appreciated at 6% per year, but losses would climb significantly – to approximately 35% – if housing prices remained flat, and that the

- 19 -

CDOs would essentially become worthless if housing prices fell by only 2% per year. JA279(¶153). What defendants knew and failed to disclose was that once the domestic real-estate market began its decline in late 2005, accelerating into 2006, mortgage delinquencies drastically increased, housing prices fell sharply and Citi's portfolio with its significant exposure to U.S. sub-prime mortgage-related assets suffered greatly. JA247(¶69(e)).

> **B.     Citi Issues Securities with False and Misleading Offering Documents that Failed  to Disclose Its True Exposure to U.S. Subprime Mortgage-Related Assets**

Citi issued 21 medium-term Euro Notes with an aggregate value of $25 billion in the European Economic Area ("EEA") pursuant to three base prospectuses dated October 12, 2005, October 12, 2006, and October 2, 2007, and 13 prospectus supplements. JA285(¶171). These Offering Documents incorporated by reference Citi's corporate financial statements that defendants prepared in New York to be filed with the SEC in Washington D.C., and that purportedly complied with U.S. GAAP. JA222(¶2); JA231(¶22); JA267-JA277(¶¶116-147).

The Offering Documents were false and misleading because the New York bank's corporate financial statements failed to disclose the true extent of Citi's exposure to risky subprime U.S. residential mortgage-related assets, as required by U.S. accounting rules, and concealed the truth about Citi's overall financial health and

- 20 -

capitalization.  JA225-JA228(¶¶9-12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶57-73); JA251-JA277(¶¶79-148); JA294-JA298.  The Complaint alleges that defendants' SEC filings:

- failed to disclose the full extent of its vulnerability to the risks of U.S. RMBSs and of CDOs that were backed by RMBSs, JA223-JA224(¶¶7-8); JA242-JA244(¶¶60-66);

- failed to maintain adequate loan-loss reserves even as the quality of its overall portfolio deteriorated from its exposure to subprime U.S. mortgages, JA224-JA225(¶8); JA244-JA247(¶¶67-70);

- claimed to be "well capitalized" when in reality, Citi's borrowing exceeded its market capitalization by astonishing amounts, JA226(¶10); JA247-JA250(¶¶71-76);

- failed to disclose the risky assets held in its SIVs, such as RMBSs and CDOs, which were both backed by subprime U.S. mortgages, JA226-JA227(¶11); JA250-JA251(¶¶77-79); and

- violated U.S. disclosure rules of the SEC and GAAP in its financial statements by, *inter alia*, failing properly to quantify Citi's withering financial condition (as evidenced by its massive exposure to subprime debt), JA227-JA228(¶12); JA251-JA267(¶¶80-115).

By concealing Citi's exposure to toxic subprime assets and misrepresenting the Company's true financial condition, in violation of U.S. accounting rules, defendants were able to sell non-investment grade junk bonds for investment-grade prices. JA228-JA229(¶14).  Given the misleading character of the corporate financial

- 21 -

statements in Citi's SEC filings, investors had no idea of the enormous risks they were taking in purchasing the Euro Notes.

### C. Citi's Misconduct Is Revealed as the U.S. Real Estate Market Collapses

When the U.S. housing market imploded in 2007, Citi was finally forced to admit its massive subprime exposure, the extent of which was previously concealed. In late 2007 or early 2008, Citi disclosed more than $50 billion of previously undisclosed CDO exposure. JA224-JA225(¶8(a)-(c)); JA228(¶13). Yet even after disclosing its massive CDO exposure, Citi failed to accurately value its exposure and instead represented throughout 2007 and most of 2008 that it was "well-capitalized." JA248(¶72). It was not until late 2008 that Citi announced that it would cease valuing $80 billion of its impaired subprime assets at their market price each reporting period by removing them from the trading portfolio and reclassifying them as "held to maturity," "held for sale" or "held for investment." JA249-JA250(¶74(b)).

The crumbling U.S. real-estate market also severely affected Citi's affiliated SIVs. By November 2008 the SIVs' assets were illiquid, and Citi, which had committed to providing a liquidity back-stop to the SIVs in the event they failed or otherwise became insolvent, was forced to unwind them at a cost of $17.4 billion and bring their toxic assets onto its balance sheet. JA241(¶56); JA251(¶79(c)). In late

- 22 -

2008, Citi also increased its loan-loss reserves by more than $9 billion, or 45%, to cover over its suffering loan portfolio.  JA262(¶105).

> **D.  Citi Accepts Emergency Funds from the U.S. Federal Government in the Biggest Federal Bailout to Date; the Euro Note Securities Plummet in Value**

As Citi's financial situation worsened, Citi began in 2008 secretly borrowing as much as $100 billion from the Federal Reserve.  JA226(¶10); JA250(¶75).  Citi also took capital infusions totaling $45 billion from the U.S. Treasury and received $300 billion of emergency insurance in order to avoid bankruptcy.  JA227-JA228(¶12).  All told, Citi received almost half a trillion dollars in federal support – the largest government bailout in history.  JA226(¶10); *see also* http://nymag.com/daily/intelligencer/2011/03/citibank_received_more_bailout.html (last visited October 24, 2014).

Not until early 2009 did investors learn the true extent of Citi's financial woes.  JA229(¶16); JA285(¶172).  Following multiple corrective disclosures by Citi and the U.S. Government's announcement of a third bailout which would result in a 34% equity stake, investors began to realize that Citi might be insolvent.  JA286(¶173).  The New York company's Euro Notes, like its other securities, plummeted in value, hitting their low price between February 25, 2009, and April 8, 2009, and losing approximately $9 billion in value.  JA229(¶¶15-16); JA285(¶172); JA286(¶174).

- 23 -

**E. Citi Litigates Dozens of Civil Actions in New York**

As a direct result of its misleading financial statements and SEC filings, Citi became the focus of U.S.-based governmental investigations, enforcement actions and civil actions. For example, on July 29, 2010, the SEC filed a civil securities-fraud complaint under §17 of the Securities Act of 1933 against Citi and two executives related to Citi's undisclosed CDO exposure. JA230(¶17). Citi agreed to pay a $75 million civil penalty, and the executives agreed to pay additional penalties. *Id*.

By the time plaintiff filed the initial complaint in this action in August 2012, many civil actions had been filed against Citi and the individual defendants, alleging that the New York bank's concealment of risks related to RMBSs and false financial statements violated the federal securities laws,[3] as well as giving rise to claims under

---

[3]     *See, e.g., In re Citigroup Inc. Sec. Litig.*, No. 07-cv-9901 (S.D.N.Y.) (Nov. 8, 2007); *In re Citigroup Bond Litig.*, No. 08-cv-9522 (S.D.N.Y.) (Sept. 30, 2008); *International Fund Management S.A., et al. v. Citigroup Inc., et al.*, No. 09-cv-8755 (S.D.N.Y.) (Oct. 14, 2009); *Hammerschlag v. Citigroup Inc.*, No. 07 Civ. 10258 (S.D.N.Y.) (Nov. 9, 2007); *Pub. Emps. Ret. Assoc. of Colorado v. Citigroup Inc.*, No. 08 Civ. 0135 (S.D.N.Y.) (Jan. 7, 2008); *Fisher v. Citigroup Inc.*, No. 08 Civ. 0136 (S.D.N.Y.) (Jan. 7, 2008); *Louisiana Sheriffs' Pension and Relief Fund v. Citigroup Inc.*, No. 602830-2008 (N.Y. Sup. Ct.) (Sept. 30, 2008); *Minneapolis Firefighters' Relief Assoc. v. Rosen*, No. 650414-2008 (N.Y. Sup. Ct.) (Oct. 28, 2008); *Buckingham v. Citigroup Inc.*, No. 09 Civ. 2355 (S.D.N.Y.) (Mar. 13, 2009); *Chen v. Citigroup Inc.*, No. 09 Civ. 2402 (S.D.N.Y.) (Mar. 16, 2009); *Pellegrini v. Citigroup Inc.*, No. 09 Civ. 3669 (S.D.N.Y.) (Apr. 9, 2009); *Asher v. Citigroup Inc.*, No. 09 Civ. 4485 (S.D.N.Y.) (May 11, 2009); *Brecher v. Citigroup Inc.*, No. 09 Civ. 0606 (S.D. Cal.)

- 24 -

the Employee Retirement Income Security Act ("ERISA"),[4] and for breach of fiduciary duty.[5]  Nearly all of these actions were filed in New York where Citi is headquartered, defendants reside and where substantial evidence originated.  Civil

---

(Mar. 24, 2009); *Brecher v. CGMI*, No. 09 Civ. 87937 (Cal. Sup. Ct.) (Apr. 17, 2009); *Koch v. Citigroup Inc.*, No. 09 Civ. 1805 (S.D. Cal.) (Aug. 19, 2009).

[4]     *See Gray v. Citigroup Inc.*, No. 07 Civ. 9790 (S.D.N.Y.) (Nov. 5, 2007); *Rose v. Citigroup Inc.*, No. 07 Civ. 10294 (S.D.N.Y.) (Nov. 13, 2007); *Tranberg v. Citigroup Inc.*, No. 07 Civ. 10341 (S.D.N.Y.) (Nov. 14, 2007); *Rappold v. Citigroup Inc.*, No. 07 Civ. 10396 (S.D.N.Y.) (Nov. 16, 2007); *Tadros v. Citigroup Inc.*, No. 07 Civ. 10442 (S.D.N.Y.) (Nov. 19, 2007); *Fiorino v. Citigroup Inc.*, No. 07 Civ. 10458 (S.D.N.Y.) (Nov. 19, 2007); *Bolla v. Citigroup Inc.*, No. 07 Civ. 10461 (S.D.N.Y.) (Nov. 19, 2007); *Geroulo v. Citigroup Inc.*, No. 07 Civ. 10472 (S.D.N.Y.) (Nov. 20, 2007); *Woodward v. Citigroup Inc.*, No. 07 Civ. 11207 (S.D.N.Y.) (Nov. 26, 2007); *Stevens v. Citigroup Inc.*, No. 07 Civ. 11156 (S.D.N.Y.) (Dec. 11, 2007); *Goldstein v. Citigroup Inc.*, No. 07 Civ. 11158 (S.D.N.Y.) (Dec. 11, 2007); *Southard v. Citigroup Inc.*, No. 07 Civ. 11164 (S.D.N.Y.) (Dec. 11, 2007); *Brick v. Citigroup Inc.*, No. 07 Civ. 11369 (S.D.N.Y.) (Dec. 18, 2007); *Walsh v. Citigroup Inc.*, No 08 Civ. 6177 (S.D.N.Y.) (July 7, 2008).

[5]     *See Harris v. Prince*, No. 07 Civ. 9841 (S.D.N.Y.) (Nov. 7, 2007); *Cinotto v. Prince*, No. 07 Civ. 9900 (S.D.N.Y.) (Nov. 8, 2007); *Fosbre v. Prince*, No. 603716-2007 (N.Y. Sup. Ct.) (Nov. 8, 2007); *Nathanson v. Prince*, No. 07 Civ. 10333 (S.D.N.Y.) (Nov. 14, 2007); *Cohen v. Citigroup Inc.*, No. 07 Civ. 10344 (S.D.N.Y.) (Nov. 15, 2007); *Kops v. Prince*, Civ. A. No. 3338-CC (Del. Ch.) (Nov. 9, 2007); *Ryan v. Prince*, No. 07 Civ. 11581 (S.D.N.Y.) (Dec. 26, 2007); *Montgomery Cty. Emps.' Ret. Fund v. Prince*, Civ. A. No. 3436-CC (Del. Ch.) (Dec. 28, 2007); *Sheldon M. Pekin Irrevocable Descendants Trust Dated 10/01/01 v. Prince*, Civ. A. No. 3453-CC (Del. Ch.) (Jan. 9, 2008); *Augenbaum v. Prince*, No. 08-600069 (N.Y. Sup. Ct.) (Jan. 9, 2008); *City of New Orleans Emps. Ret. Sys. v. Prince*, Civ. A. No. 3504-CC (Del. Ch.) (Jan. 29, 2008); *Lerner v. Prince*, No. 650417-2009 (N.Y. Sup. Ct.) (July 15, 2009).

- 25 -

actions such as *In re Citigroup Inc. Sec. Litig.*, No. 07-cv-9901 (S.D.N.Y.), *In re Citigroup Bond Litig.*, No. 08-cv-9522 (S.D.N.Y.), and *International Fund Management S.A., et al. v. Citigroup Inc., et al.*, No. 09-cv-8755 (S.D.N.Y.), alleging Citi's failure to disclose the extent of its exposure to subprime assets, for example, were pending in the Southern District of New York before Judge Stein when the Complaint was filed.  Like this case, they alleged that Citi's financial statements and SEC filings were false and misleading in light of problems with U.S. mortgages and U.S. mortgage-backed securities.

More recently, Citi and the U.S. Department of Justice ("DOJ") in July 2014 reached a $7 billion deal to settle federal and state civil claims related to Citi's misconduct concerning U.S. residential mortgage-backed securities.[6]  Under the settlement's terms, Citi will pay $7 billion, including a $4 billion cash civil penalty – the largest single penalty payment ever – as well as $2.5 billion in consumer relief,

---

[6]    Although Citi's recent settlement with the DOJ happened only after the district court's dismissal order, it may be judicially noticed by this Court on appeal.  *See United States v. Pink*, 315 U.S. 203, 216 (1942) (noticing record in another proceeding); *see also United States v. Louisiana*, 363 U.S. 1, 12-13 (1960) (noticing "a massive array of historical documents"); *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 706 (7th Cir. 2005) (taking judicial notice of court proceedings in case involving *forum non conveniens* dismissal); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (taking judicial notice of opinion that postdated the record on appeal).

$208 million to the Federal Deposit Insurance Corporation and $291 million total to state attorneys generals for New York ($92 million), California ($102.7 million), Illinois ($44 million), Massachusetts ($45.7 million) and Delaware ($7.35 million).[7]

## VI. STANDARD OF REVIEW

This Court reviews *forum non conveniens* rulings for abuse of discretion. *See Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75-76 (2d Cir. 2003). Reversal is appropriate where a ruling: (1) "rests either on an error of law or on a clearly erroneous finding of fact"; (2) falls outside "the range of permissible decisions"; or (3) "fails to consider all the relevant factors or unreasonably balances those factors." *Id*. at 70. Accordingly, when considering a *forum non conveniens* dismissal, "the issue . . . is not whether the district court abused its broad discretion, but whether it misapprehended or misapplied the relevant legal standards." *Bigio v. Coca-Cola Co*., 448 F.3d 176, 179 (2d Cir. 2006); *see also Irish Nat'l Ins. Co. v. Aer*

---

[7]  *See* http://www.justice.gov/opa/pr/2014/July/14-ag-733.html (last visited October 24, 2014); *see also* http://dealbook.nytimes.com/2014/07/14/citigroup-and-u-s-reach-7-billion-mortgage-settlement/?_php=true&_type=blogs&_r=0 (last visited October 24, 2014); *see also* http://www.justice.gov/iso/opa/resources/471201471413656848428.pdf (last visited October 24, 2014). Reflecting the nexus between Citi's misconduct and New York, the DOJ settlement provides the Eastern District of New York with exclusive jurisdiction and venue over any disputes arising from the settlement. *See* http://www.justice.gov/iso/opa/resources/471201471413656848428.pdf (last visited October 24, 2014).

- 27 -

*Lingus Teoranta*, 739 F.2d 90, 92 (2d Cir. 1984) (appellate court reviewing *forum non conveniens* dismissal has "the right to determine whether the district court reached an erroneous conclusion on either the facts or the law").

A district court's denial of a party's motion to alter or amend judgment under Rule 59(e) is likewise reviewed for abuse of discretion. *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004). "'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998) (citation omitted).

## VII.   SUMMARY OF THE ARGUMENT

This is a New York-centered case about a New York bank's misleading corporate financial statements and SEC filings, not a U.K. or Luxembourg-centered case – even though the SEC filings and financial statements were incorporated by reference in offering documents for securities that trade on the stock exchanges of Luxembourg, London and Copenhagen. Citi is headquartered in the forum, and all of the individual defendants reside in New York, where they generated the allegedly misleading corporate financial statements and SEC filings at issue in this action. As a consequence, substantial evidence relating to Rentokil's claim that Citi's financial statements were misleading is located in New York, where Citi has already litigated

- 28 -

979479_1

civil suits involving similar allegations concerning its financial statements and failure to disclose its full exposure to subprime assets consisting of U.S. residential mortgages. Critical events occurring in the U.S. – the real estate market collapse and government bailout – forced Citigroup to disclose its toxic debt portfolio.

The case's significant and profound *bona fide* connections to the United States and New York require substantial deference to Rentokil's forum choice. Rentokil's status as a foreign pension fund does not automatically warrant less deference, as the district court held. SA007-SA008. Rather, this Court holds that the deference owed to a foreign plaintiff's forum choice is determined on a sliding scale, controlled by factors indicating convenience. *See Iragorri*, 274 F.3d at 73-74 (en banc). In holding that Rentokil's forum choice was entitled to only "minimal" deference, SA007-SA008, the district court erred by ignoring the profound *bona fide* connections in this case and failing to give proper weight to defendants' residence in the forum, which this Court holds is a "strong indicator" of convenience, *Norex Petroleum, Ltd. v. Access Indus.*, 416 F.3d 146, 155 (2d Cir. 2005), that "weighs heavily against dismissal." *Schertenleib v. Traum*, 589 F.2d 1156, 1164 (2d Cir. 1978).

Moreover, although it was required to find that ***both*** private and public-interest factors tilt ***strongly*** in favor of litigating in the foreign jurisdiction, the district court concluded that only one of the private-interest factors "tilts ***slightly*** in favor" of

- 29 -

litigating in the U.K.  SA010 (emphasis added).  Its conclusion that even that factor "tilts slightly" toward the U.K. because "United Kingdom-based witnesses are the most obviously relevant fact witnesses" (*id*.), indefensibly overlooks the fact that Citi personnel in New York, who prepared the financial statements at issue in this case, are not in the U.K. – but in New York.

Its conclusion that public-interest factors favor a foreign forum is based on the unsupportable notion that it is "unfair" to ask a New York jury to decide claims that a New York bank's financial statements and SEC filings were misleading, and on the erroneous supposition that permitting a New York jury do so would tread upon "the United Kingdom's interest in having 'localized controversies decided at home.'" SA012 (citation omitted).  A case that turns upon whether a New York bank's financial statements and SEC filings were misleading is not localized to the United Kingdom merely because securities whose offering documents incorporated them by reference trade on European stock exchanges.

Finally, the United Kingdom is not an adequate alternative forum if Rentokil cannot actually litigate its claims there.  Having found the U.K. an adequate forum *because* it recognizes claims for deceit and misrepresentation, the district court refused to impose conditions permitting them to be litigated there.

- 30 -

## VIII.  ARGUMENT

### A.  The District Court Erred in Granting Dismissal Based on *Forum Non Conveniens*

A "plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. British Broad. Corp*., 386 F.3d 224, 230 (2d Cir. 2004).  District courts may dismiss a complaint based on *forum non conveniens* only in "rare instances." *Wiwa v. Royal Dutch Petroleum Co*., 226 F.3d 88, 100 (2d Cir. 2000). Such instances arise only when: (1) "an alternative forum has jurisdiction to hear the case" and "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience'"; or (2) "the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft*, 454 U.S. at 241 (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co*., 330 U.S. 518, 524 (1947)).  Accordingly, a "defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 423.  Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508 (1947).

To determine whether a defendant has met this burden, a court must conduct a three-step inquiry. *Iragorri*, 274 F.3d at 73-74 (en banc).  First, the court must

- 31 -

determine the level of deference accorded to a "plaintiff's choice of forum." *Id*. at 73. Second, the court must "consider whether an adequate alternative forum exists." *Id*. Third, the court must balance public and private factors. *Id*. at 73-74.

Applying this three-step test, the district court failed to consider important facts and misapplied the relevant legal standards by:

- giving insufficient deference to Rentokil's choice of the defendants' home court to litigate a case with substantial *bona fide* connections to the United States and New York;

- relieving defendants of their burden of showing that both the private and public-interest factors tilt heavily in favor of dismissal;

- ignoring New York's and the United States' significant interests in adjudicating claims arising from misconduct that occurred in New York and which substantially involve the U.S. real-estate market and loans backed by U.S. residential mortgages; and

- finding the United Kingdom is an adequate alternative forum, even though defendants have not sufficiently consented to personal jurisdiction there and a cause of action for misrepresentation under English law may be untimely if brought now in the U.K.

## B. The District Court Erred in Failing to Give Plaintiff's Forum Choice Substantial Deference

This Court's en banc decision in *Iragorri* explains that where, as here, a foreign plaintiff chooses a U.S. forum, the degree of deference owed to the plaintiff moves on a "sliding scale" such that "the greater the plaintiff's or the lawsuit's *bona fide* connection to the United States and to the forum of choice and the more it appears that

- 32 -

considerations of convenience favor the conduct of the lawsuit in the United States," the more deference will be accorded the plaintiff's choice of forum and "the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri*, 274 F.3d at 72. The district court may discount the deference only if a plaintiff's choice of forum is motivated by improper forum-shopping. *Id.*; *see also Pollux*, 329 F.3d at 71 ("[a]bsent proof that [foreign] plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, factors relating to convenience or expense generally weigh heavily in favor of the plaintiff's choice").

Yet the district court held that it would "defer only minimally to Rentokil's decision to bring its lawsuit in the Southern District of New York." SA008. Based merely on Rentokil's status as a foreign pension fund, the district court concluded that it "begins with a disadvantage in the deference analysis." SA007. It failed to apply, or even to mention, *Iragorri*'s sliding-scale analysis – under which a foreign plaintiff's forum choice does not automatically warrant minimal deference, but rather requires the court to look for factors indicating convenience, such as *bona fide* connections to the chosen forum, which this case certainly has. *See Iragorri*, 274 F.3d at 72.

The only additional rationale the district court gave for affording plaintiff's chosen forum minimal deference was that "Rentokil's investments that form the basis

- 33 -

for this lawsuit are securities listed on foreign stock exchanges, governed by foreign legislation, and subject to regulation by foreign authorities." SA007. Yet Rentokil's claim is that the securities' prospectuses were misleading because they incorporated by reference a New York bank's corporate financial statements, which defendants drafted and approved in New York and filed with the SEC, and which misrepresented Citi's exposure to subprime loans and RMBSs that originated in the United States. JA227(¶12); JA231-JA232(¶¶22-27); JA241-JA249(¶¶58-73). Events and actions in New York will be at the center of any showing that these documents were in fact misleading, or that any defendant knew them to be so. That a New York bank's misleading corporate financial statements were incorporated by reference in securities that happen to trade on stock exchanges in Luxembourg, London or Copenhagen does not deprive New York of its status as a legitimate forum for prosecuting claims against the New York bank whose false corporate financial statements are at the matter's core.

Although it acknowledged that "Defendants are all citizens or residents of New York," that "the FAC alleges that several material facts occurred in New York," and that "the parties agree that 'a substantial amount of evidence related to plaintiff's claim is located in New York,'" SA007 (citation omitted), the district court failed to

- 34 -

accord proper weight to these factors which require substantial deference to Rentokil's forum choice of New York as a convenient forum.

The district court's errors in its deference analysis are discussed in detail below.

### 1. The District Court Failed to Give Proper Weight to Defendants' Residence in the Chosen Forum

In this case, each of the individual defendants resides in New York and Citi is headquartered in the district, presenting the "somewhat unusual fact that it is the forum resident who seeks dismissal." *Schertenleib*, 589 F.2d at 1164. That defendants actually reside in plaintiff's chosen forum "weighs heavily against dismissal." *Id*. at 1164; *accord Manu Int'l, S.A. v. Avon Products, Inc*., 641 F.2d 62, 67 (2d Cir. 1981); *see also Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*, 725 F. Supp. 2d 438, 442-43 (S.D.N.Y. 2010) ("[t]hree of the four Citi defendants are located in New York, and thus can hardly complain that being sued in their home location is an inconvenience"), *aff'd*, 716 F.3d 296 (2d Cir. 2013).

After all, "the central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft*, 454 U.S. at 249. Thus, a foreign plaintiff's "decision to litigate in New York, where all defendants were amenable to suit (and where some reside or are incorporated) is properly viewed as a ***strong indicator*** that convenience, and not tactical harassment of an adversary, informed its decision to sue outside its

- 35 -

home forum." *Norex*, 416 F.3d at 155 (emphasis added); *see also Lony v. E. I. Du Pont de Nemours & Co*., 886 F.2d 628, 634 (3d Cir. 1989) ("The foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located. . . . That in itself has considerable weight in showing that the plaintiff[']s choice [of forum] was based on convenience.").

Any claim of inconvenience from defendants who reside in the chosen forum, should be viewed "with an appropriate degree of skepticism." *Iragorri*, 274 F.3d at 75. "Courts should be mindful that just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *Id*.

Absent evidence of forum shopping, substantial deference to a foreign plaintiff's chosen forum is therefore warranted when defendants reside in the forum. *See Norex*, 416 F.3d at 156 (holding that where defendants reside and were amenable to process in New York, the Canadian "plaintiff's own choice of a New York forum rather than its home forum was motivated by genuine jurisdictional convenience and, as such, merits 'substantial deference' on any sliding-scale analysis") (citation omitted); *see also Pollux*, 329 F.3d at 74 (when plaintiff's choice of the defendant's

- 36 -

home forum is "made to obtain jurisdiction over defendant . . . substantial deference would still be generally appropriate"). This Court's en banc decision in *Iragorri* declares:

> It would make little sense to withhold deference for the plaintiff's choice merely because she did not sue in her home district. Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant.

*Iragorri*, 274 F.3d at 73.

Here, the district court did not ascribe any forum-shopping motives to Rentokil's choice of New York as a forum. Rentokil's decision to litigate in New York, where all of the defendants reside and are amenable to suit, and where substantial evidence exists concerning Citi's corporate financial statements, is thus a "strong indicator" that the choice was based on convenience, and is entitled to substantial deference on *Iragorri*'s sliding-scale. *Norex*, 416 F.3d at 155. Such deference is buttressed by the *bona fide* connections between plaintiff's claim and the chosen forum, as discussed in further detail below.

The district court erred in holding that plaintiff Rentokil, as a foreign citizen, automatically "begins with a disadvantage in the deference analysis," SA007, without examining more closely defendants' residence and actions in New York as evidence

- 37 -

of convenience under *Iragorri*'s sliding scale. In *Norex*, this Court reversed a *forum non conveniens* dismissal where "the district court erred in relying almost exclusively on the presumption that a foreign plaintiff's choice of a non-home forum is inconvenient to afford Norex's choice little deference." *Id*. at 152, 157; *see also Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010) (reversing *forum non conveniens* dismissal where the defendant was a resident of the forum and "the district court should have examined this fact more closely in its *forum non conveniens* analysis"); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) (reversing *forum non conveniens* dismissal where the district court's opinion affords little weight to the "significant factor" that "defendants are U.S. citizens and the action was transferred to their home district").

### 2. The District Court Ignored the Profound *Bona Fide* Connections to the United States and New York

Plaintiff's claims have profound *bona fide* connections to New York and the United States, further supporting the substantial deference owed to plaintiff's forum choice under *Iragorri*'s sliding-scale analysis.

The claims are based on the alleged falsity of a New York bank's financial statements and SEC filings. All of Citi's SEC filings – which contain the false and misleading corporate financial statements at issue in this case – were prepared and

- 38 -

approved at Citi's headquarters in New York. JA231-JA232(¶¶22, 27). Defendants themselves admit that "the alleged misstatements were made in New York," (JA095n.12), and that "a substantial amount of evidence related to plaintiff's claim is located in New York." JA097-JA098. All of the individual defendants, who have first-hand knowledge of the facts underlying the Complaint's allegations, reside in New York. JA231-JA232(¶¶23-26). Other Citi personnel responsible for generating the financial statements included in Citi's offering documents doubtless are located in New York, too. Surely, there is no reason to think that they reside in the U.K. or Luxembourg.

The risky assets that collateralized Citigroup's debt portfolio, Citi's exposure to which Rentokil alleges defendants repeatedly misrepresented, consist of sub-prime mortgage loans originating in the United States – not in the U.K. or Luxembourg. JA241-JA249(¶¶57-73). And, the critical events that finally forced Citigroup to disclose its toxic debt portfolio – the mortgage crisis and government bailout – all occurred in the United States. JA227-JA228(¶12); JA247(¶69(e)).

Moreover, this case involves corporate financial statements subject to U.S. accounting rules under GAAP, not European accounting rules under the IFRS which govern accounting in the European Union. JA227(¶12); JA231(¶22); JA251-

- 39 -

JA277(¶¶80-148). The district court gave short shrift to the fact that this case turns on the application of U.S. accounting rules rather than European standards.

Finally, when the initial complaint was filed, multiple cases were pending against Citi in the same forum arising from the same underlying facts.[8] Citi itself acknowledges that it "has already engaged in extensive fact discovery in related putative class actions that have been pending before [the district] Court since 2007."[9] JA097. That Citi was already litigating in New York, and had engaged in extensive discovery in the related cases, underscores the convenience of litigating in defendants' home forum. *See In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F.

---

[8] *See In re Citigroup Inc. Sec. Litig.*, No. 07-cv-9901 (SHS); *In re Citigroup Bond Litig.*, No. 08-cv-9522 (SHS); *International Fund Management S.A., et al. v. Citigroup Inc., et al.*, No. 09-cv-8755 (SHS). Although these cases either settled or were voluntarily dismissed in 2013 and are therefore no longer pending, the first step of the *Iragorri* analysis concerning the deference owed to a plaintiff's forum choice considers factors of convenience existing ***at the time the complaint was filed***. *See Iragorri*, 274 F.3d at 75.

[9] Defendants were proceeding with discovery in *In re Citigroup Bond Litig* before the case ultimately settled for $730 million, *see In re Citigroup Bond Litig.*, No. 08-cv-9522 (SHS), Dkts. 142 & 180 (S.D.N.Y.), and plaintiffs in *In re Citigroup Inc. Sec. Litig.* and *International Fund Management S.A., et al. v. Citigroup Inc., et al.* were in the process of coordinating discovery with the *Bond* case before *In re Citigroup Inc. Sec. Litig* settled for $590 million, *see In re Citigroup Inc. Sec. Litig.*, No. 07-cv-9901 (SHS), Dkts. 84 & 275-276 (S.D.N.Y.), and *International Fund Management S.A., et al. v. Citigroup Inc., et al.* was voluntarily dismissed, *see International Fund Management S.A., et al. v. Citigroup Inc., et al.*, No. 09-cv-8755 (SHS), Dkts. 41 & 62 (S.D.N.Y.).

- 40 -

Supp. 2d 348, 369-70 (S.D.N.Y. 2002) (even though plaintiff is a British citizen, "the fact that 11 other related Holocaust insurance cases are to be litigated in the [Southern District of New York] is a convenience factor that tilts sufficiently in his favor to preclude dismissal" under *forum non conveniens*).

This Court's holding in *Norex* is instructive. Although defendants there had far fewer connections with New York than defendants here, this Court accorded substantial deference to the plaintiff's choice to sue in New York. In *Norex*, a Canadian corporation sued several U.S. residents and a group of New York and European companies for misconduct in connection with the defendants' alleged takeover of a Russian oil company. *Norex*, 416 F.3d at 149. Aside from the plaintiff's allegation that defendants "us[ed] New York banks to effect wire transfers of approximately $24 million," few events giving rise to the action took place in New York. *Id*. at 152. In fact, "extensive [related] litigation ensue[d] in Russian courts." *Id*. Dismissing the action based on *forum non conveniens*, the district court found that plaintiff's choice of forum deserved only limited deference. *Id*. at 153-54.

This Court reversed, holding that the district court erred by failing to consider the fact that "all defendants were amenable to suit" in New York and that witnesses and evidence would "be more easily available to all parties in New York" than in plaintiff's home forum, even while recognizing that the plaintiff might also have been

- 41 -

motivated to litigate in the United States due to the possibility of a Racketeer Influenced and Corrupt Organizations Act ("RICO") treble-damages award. *Id.* at 155-56. "[E]ven if Norex, as a foreign corporation, is not entitled to the same high deference for its New York forum choice as a resident plaintiff, the totality of *Iragorri* factors strongly suggests that its choice warranted substantial deference." *Id.* at 156.

Under *Norex*, the significant connections between Rentokil's claims and the chosen forum require substantial deference to its choice of forum. *See also Monegro v. Rosa*, 211 F.3d 509, 513-14 (9th Cir. 2000) (Reversal is warranted where "plaintiffs' chosen forum is more than merely the American defendants' home forum. It is also a forum with a substantial relation to the action.").

The district court's holding that plaintiff's forum choice is entitled to only "minimal deference," SA007-SA008, fails to give due weight to Citi's status as a New York bank, and to the defendants' residence and amenability to process in New York, which is a "strong indicator" of convenience. *See Pollux*, 329 F.3d at 75-76; *Norex*, 416 F.3d at 155.

### C. The Private and Public Interest Factors Do Not Tilt Heavily in Favor of Litigating in the United Kingdom

This Court holds that "'plaintiff's choice of forum is to be respected unless the balance of ***both*** public and private interests strongly justifies a transfer.'" *Manu*, 641

- 42 -

F.2d at 65 (emphasis added and citation omitted); *see Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009) (*forum non conveniens* dismissal inappropriate unless "the balance of private and public interest factors tilts heavily in favor of the alternative forum"). "[T]he greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal." *Iragorri*, 274 F.3d at 74. Where a plaintiff's forum choice is entitled to substantial deference, defendants thus bear the heavy burden of showing that "trial in the chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience.'" *Piper Aircraft*, 454 U.S. at 241. Even when plaintiff's choice of forum is entitled to little deference, "a defendant must still show that the balance of the private and public convenience factors tips 'strongly' in favor of the alternative forum" in order to achieve a *forum non conveniens* dismissal. *Figueiredo*, 665 F.3d at 406 (citation omitted).

Because the district court erred in failing to accord plaintiff's forum choice the proper degree of deference, it must on remand "recalibrate" the balance for purposes of analyzing the public and private interests. *Norex*, 416 F.3d at 157; *see also Iragorri*, 274 F.3d at 74. Even assuming *arguendo* that plaintiff's choice of forum is entitled to minimal deference, however, reversal is nonetheless warranted because the

- 43 -

district court's ruling was the result of unreasonable balancing of the private and public-interest factors, which failed to hold defendants to their heavy burden of showing that dismissal is strongly justified.

> **1. The District Court Improperly Relieved Defendants of Their Burden to Show that Private-Interest Factors Strongly Favor the United Kingdom**

The relevant private-interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. The Supreme Court instructs that "unless the balance is ***strongly*** in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id*. (emphasis added).

Considering the private-interest factors, the district court determined that with respect to practical problems between the two fora, "the United Kingdom and New York ***are roughly equal*** in practical convenience for the parties, because each forum is in close proximity to substantial documents and witnesses." SA011 (emphasis added). With regard to access to sources of proof, the district court likewise concluded that this factor was "***in equipoise***." SA009-SA010 (emphasis added). It

- 44 -

held that only one factor, the attendance of witnesses, "tilts **slightly** in favor of the

United Kingdom," explaining:

> The relevant personnel at Rentokil and Citigroup are located in the
> United Kingdom and elsewhere in Europe.  Rentokil has expressed an
> interest in calling United States-based expert witnesses.  Thus, in a U.K.
> trial, any U.S. witnesses may lie outside of compulsory process or
> convenient attendance, and the same is true of any U.K. witnesses in a
> U.S. trial.  The United Kingdom-based witnesses are the most obviously
> relevant fact witnesses (*i.e.*, the relevant agents of the parties), whereas
> plaintiff's preferred experts are the only United States-based witnesses in
> whose testimony any party has expressed an interest.  Thus, if this factor
> tilts toward either forum, it tilts **slightly** in favor of the United Kingdom.

SA010 (emphasis added).

Nowhere does the district court conclude that the balance of private interests

"strongly" favors the United Kingdom, as defendants had the burden to show.

*Gilbert*, 330 U.S. at 508; *Figueiredo*, 665 F.3d at 406.  Were the district court correct

that attendance of witnesses "tilts slightly in favor of the United Kingdom," SA010,

that would not make its *forum non conveniens* dismissal tenable.   In *Gross*, for

example, where the district court concluded that the private interests factors

"somewhat favored England during the unlikely event of a trial," this Court

concluded:  "We do not see how this analysis tips the balance of interests strongly in

favor of England, and it is plainly insufficient to overcome the initial presumption in

favor of plaintiff's choice of . . . forum."  386 F.3d at 233; *see also DiRienzo v. Philip*

- 45 -

*Servs. Corp.*, 294 F.3d 21, 23 (2d Cir. 2002) ("[O]n the evidence presented, we think the balance of the private interest factors is close. . . . *Gilbert* tells us that unless the balance strongly favors defendant, plaintiffs' choice of forum 'should rarely be disturbed.'") (citation omitted); *Lony*, 886 F.2d at 635 ("If the balance of private interest factors is close to equipoise, as the district court found it to be, that would not favor dismissal."). Accordingly, the district court should have denied defendants' motion to dismiss. *See Norex*, 416 F.3d at 157.

Moreover, in its analysis of the attendance of witnesses – the single category that the district court found "tilts slightly in favor of the United Kingdom" – the district court erroneously concluded that the most relevant fact witnesses at Citi are located "in the United Kingdom and elsewhere in Europe," and that "United Kingdom-based witnesses are the most obviously relevant fact witnesses." SA010.

The district court failed to explain how Citi employees ***in the U.K. and Europe*** are best positioned to know what Citi personnel ***in New York*** were doing to conceal Citi's financial problems ***in the United States*** and to falsify the financial documents prepared and approved ***in New York*** for filing with the SEC ***in Washington D.C.*** Rentokil's case focuses on the falsity of Citi's corporate financial statements and SEC filings, ***all*** of which emanated from New York. The most relevant fact witnesses are therefore Citi personnel and former employees in New York, who were responsible

- 46 -

for generating the New York bank's inaccurate and misleading financial statements, and filing them with the SEC.

The district court asserted that "plaintiff's preferred experts are the only United States-based witnesses in whose testimony any party has expressed an interest." SA010. Yet the Complaint cites no foreigners as potential fact witnesses; quite the contrary. It cites testimony before the FCIC of Richard Bowen, Citi's Business Chief Underwriter for Correspondent Lending in the Consumer Lending Group, and Bowen's internal e-mail to defendant Rubin and to Citi's Chief Financial Officer, Gary Crittenden, concerning loan-loss reserves. JA246-JA247(¶69(d)). It cites remarks of Citi's Chief Financial Officer, Crittenden, concerning CDOs, JA255-JA256(¶92), and FCIC testimony of Richard Bookstaber, Citi's former head of risk management, that prior to the fall of 2007 Citi was quietly subsidizing its CDOs business via mispricing, which was then being added to Citi's balance sheet and carried at inflated values. JA263-JA264(¶110). It cites Citi's involvement in creation of ABX and TABX indices, JA264-JA267(¶¶111-115), and Crittenden's admission concerning their relevance. JA265-JA266(¶114). And it cites testimony before the FCIC of Thomas Makeras, Citi's former trading chief who served as co-CEO of CitiGroup Markets and Banking, concerning exposure to subprime mortgage risks. JA259-JA260(¶101). None of these people reside in the U.K.

- 47 -

The Complaint's scienter allegations likewise focus on the knowledge and actions of Citi's top executives in New York. JA278-JA285(¶¶149-170). Showing defendants knew the full amount of the Company's exposure to CDOs and other subprime-related assets, for instance, the Complaint alleges that in April 2007, senior management was provided documents, including one entitled "Overview of Subprime Exposure in the Global Structured Credit Product Business," which identified an additional $37.8 billion in subprime exposure from super senior tranches of CDOs ($14.6 billion) and liquidity puts ($23.2 billion). JA278(¶150). Similarly, on July 10, 2007, senior management received a Flash Deck from the investment bank which identified more than $33 billion of exposure from super senior tranches of CDOs and liquidity puts. Senior management also was provided with a document entitled "Overview of Subprime Exposure in the Global Structured Credit Products Business" on July 10, 2007, which identified approximately $39 billion in additional subprime exposure from super senior tranches of CDOs ($14.7 billion) and liquidity puts ($24.5 billion), which was not disclosed to the market. *Id*. Likewise, on October 4, 2007, senior management participated in a Flash Call to review the Company's results for the third quarter of 2007. *Id*. Senior management was provided with a Flash Deck that identified the investment bank's total subprime exposure, which included a box

- 48 -

called "Sub-prime Exposure" that showed the investment bank's total subprime exposure was $55.7 billion. *Id.*

The district court's private-interest analysis misapprehends and misapplies relevant legal standards, and reversal is warranted.

### 2. Public Interest Factors: New York and the United States Have Strong Interests in this Litigation

Reviewing the public-interest factors, the district court concluded that litigating in the United Kingdom is "preferable in this case" because New York has "minimal interest in this litigation" concerning a New York bank's corporate financial statements, and "the United Kingdom's interest in having 'localized controversies decided at home.'" SA012 (citation omitted). "[T]he avoidance of U.S. courts determining issues of foreign law," the district court added, provides a policy rationale that "militates squarely against further litigation in New York." SA012-SA013. This analysis is deeply flawed.

New York has a strong interest in litigation challenging the veracity of a New York bank's corporate financial statements. Not only is Citi headquartered in the district, all of the individual defendants are residents of New York. JA231-JA232(¶¶22-26). A defendant's home forum "always has a strong interest in providing a forum for redress of injuries caused by its citizens." *Reid-Walen*, 933

- 49 -

F.2d at 1400; *see also DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 806 (4th Cir. 2013).

Moreover, all of the misstatements forming the basis of Rentokil's claims emanated from New York.  JA222(¶2); JA231(¶22); JA232(¶27); JA247(¶70). Defendants admit that "because the alleged misstatements were made in New York and, as Citi's principal place of business and as a world financial center, New York has a particular interest in regulating the conduct of the financial institutions doing business in New York."  JA095n.12.  They further concede not only that "a substantial amount of evidence related to plaintiff's claim is located in New York," but also that "most of this evidence originated in New York."  JA097-JA098.  Such substantial contacts provide New York with a strong interest in this litigation.  *See, e.g.*, *Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) (New York has a "'strong interest in this litigation' since [defendant] lives here and critical events took place here") (citation omitted).

The district court nowhere considered the interest of New York and the United States together in a case concerning the veracity of corporate financial statements generated in New York and filed with the SEC.  "It is beyond doubt that 'the United States has an interest in ensuring that fraud does not occur within its borders.'"  *Armco Inc. v. North Atl. Ins. Co.*, 68 F. Supp. 2d 330, 342 (S.D.N.Y. 1999) (citation omitted).

- 50 -

This litigation involves violations of U.S. accounting rules under GAAP. JA251-JA277(¶¶80-148). The prospectuses used to sell Euro Note securities for sale incorporated by reference Citi's false financial statements in its SEC filings, thereby concealing the extent of Citi's exposure to risky subprime assets comprising U.S. residential mortgages. JA251(¶79). That the United States provided Citi with nearly $500 billion in emergency funds to avoid bankruptcy, JA226(¶10), leaves little doubt that New York (and the United States) have a strong interest in this litigation and seeing Citi held accountable for its misconduct.

The district court ultimately rested its public-interest analysis on "the avoidance of U.S. courts determining issues of foreign law" as a policy consideration that "militates squarely against further litigation in New York" and that "inveighs against a U.S. court exercising jurisdiction over this action." SA012-SA013. Yet this Court has cautioned "against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu*, 641 F.2d at 68; *see also Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co*., 145 F.3d 481, 492 (2d Cir. 1998).

And the district court gave no reason why Luxembourg or English law is particularly burdensome. If Luxembourg law applies, foreign language might be an issue – but the English-speaking U.K. courts are in no better position than a U.S. court

- 51 -

is to interpret and apply the foreign laws of Luxembourg. *Cf. Calavo Growers of Ca. v. Belgium*, 632 F.2d 963, 967 (2d Cir. 1980). And to the extent U.K. law controls, as defendants insisted below, "there are few if any countries in the world whose body of law is more amenable to application in the United States than Great Britain's." *Gross*, 386 F.3d at 234; *accord, e.g.*, *Terra Firma*, 725 F. Supp. 2d at 442-43; *Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 265 (S.D.N.Y. 2005). Thus, the district court's need to apply foreign law is insufficient to push the balance strongly in favor of defendants in the overall public-interest inquiry – especially where the district court did not find that any other public-interest factors strongly justify litigation in the United Kingdom. *See Norex*, 416 F.3d at 157. Nor does the district court's need to apply foreign law negate New York's and the United States' significant public interests in litigation concerning the veracity of a New York bank's corporate financial statements.

In summary, defendants failed to carry their burden of showing that both the private and public interests strongly justify dismissal based on *forum non conveniens*. *See id.*; *see also Gross*, 386 F.3d at 233. The decision below should be reversed.

- 52 -

**D. The District Court Erred in Finding the United Kingdom Provides an Adequate Alternative Forum**

To secure dismissal of an action on grounds of *forum non conveniens*, the moving party must demonstrate the availability of an adequate alternative forum. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476 (2d Cir. 2002); *Iragorri*, 274 F.3d at 73. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75 (citing *Piper Aircraft*, 454 U.S. at 254 n.22). A forum is adequate only if ***all*** defendants are subject to jurisdiction there. *PT United Can Co. v. Crown Cork & Seal Co*., 138 F.3d 65, 73 (2d Cir. 1998); *see also Jota v. Texaco Inc*., 157 F.3d 153, 159 (2d Cir. 1998). Accordingly, *forum non conveniens* dismissals may be conditioned to protect the party opposing dismissal. *See Blanco v. Banco Indus. De Venezuela, S.A*., 997 F.2d 974, 984 (2d Cir. 1993) (collecting cases). Such conditions become necessary when "there is a justifiable reason to doubt that a party will cooperate with the foreign forum." *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001); *see also Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 248 (2d Cir. 2001).

The individual defendants reside in New York and are not amenable to process in the United Kingdom. Although the district court attempted to condition its

- 53 -

dismissal upon defendants' consent to jurisdiction in the U.K., that condition was never sufficiently satisfied. Under the particular facts of this case, the district court should have gone further to ensure that defendants would consent to personal jurisdiction as to all claims plaintiff is entitled to bring against them before it could determine that the courts of the U.K. offer an adequate alternative forum. Instead, after finding the U.K. an adequate forum because the U.K. recognizes causes of action for deceit and misrepresentation, "claims that are the subject matter of this dispute," SA008-SA009, the district court refused to condition dismissal on defendants' willingness to litigate those claims, on the ground that "Rentokil has never alleged a cause of action for misrepresentation." SA021.

The district court found adequate, as fulfilling its condition to dismissal, defendants' February 13, 2014, letter under which defendants consented to jurisdiction *only* "with respect to the claims asserted by plaintiff in the Complaint." JA301-JA302. Yet the operative Complaint asserts claims arising under Luxembourg law – law that defendants presently insist does not apply. It is conceivable, perhaps likely, that defendants will seek to limit the U.K. courts' jurisdiction to adjudication of Luxembourg-law claims and to challenge jurisdiction with respect to any other causes of action, even those arising from the facts alleged. Defendants have, after all, presented a moving target as to which law applies, first asserting that English law does

- 54 -

not apply to plaintiff's claims and that Luxembourg law controls, *see* JA078-JA080; JA088(¶32), then changing positions once Rentokil obligingly amended the complaint to plead claims under Luxembourg law, instead asserting that English law controls, but is no longer pleaded. *See* Dkt. 25 at 1-2, 8-12.

Were this case proceeding in New York, plaintiff would be entitled to pursue any and all legal theories supporting relief under facts alleged. *See Siegelman v. Cunard White Star, Ltd.*, 221 F.2d 189, 196 (2d Cir. 1955) ("It is not necessary to set out the legal theory on which the claim is based."); *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."); *see also In re Boesky Sec. Litig.*, 882 F. Supp. 1371, 1376 (S.D.N.Y. 1995) ("The Second Circuit does not restrict a complaint to the legal theories specifically identified if the allegations therein would support other theories of relief as well."). Rentokil has stated its intention to file a second amended complaint to include deceit and misrepresentation claims under the laws of England. Dkt. 34 at 3.

The individual defendants' "consent" to jurisdiction in the United Kingdom is thus inadequate and far too limited to afford Rentokil any concrete assurance that defendants will submit to litigation in the alternative forum as to all claims arising from the facts alleged.

- 55 -

Defendants' further submission, in a footnote, that they "understand their consent to personal jurisdiction to extend to legal theories based on the same facts *permitted by* the courts of England and Wales" is likewise insufficient. JA304n.1 (emphasis added). First, it is questionable whether defendants' mere representation of consent, in a footnote and in response to plaintiff's Rule 59(e) post-judgment request for relief, is binding, and the district court should have expressly conditioned its dismissal on defendants' consent to jurisdiction in the United Kingdom as to all claims arising from the facts of the Complaint. *See, e.g.*, *Kirch v. Liberty Media Corp.*, No. 04 Civ. 667 (NRB), 2006 U.S. Dist. LEXIS 82175, at *35 (S.D.N.Y. Nov. 8, 2006) ("Although the Liberty Defendants have represented to this Court that they would consent to personal jurisdiction in the civil courts of Germany, . . . we find that formally conditioning our dismissal of this case on the Liberty Defendants' consent is the prudent course."). Second, defendants' submission leaves the door open for them to challenge any new legal theories as *not permitted*.

The district court erred moreover in failing to condition its dismissal on defendants' agreement to waive any statute of limitations defenses not available when plaintiff first filed suit in New York. Although recognizing that a misrepresentation claim brought under English law might be time-barred if brought in the alternative forum, it ruled that "Rentokil has never alleged a cause of action for

- 56 -

misrepresentation." SA021. Yet its *forum non conveniens* order had found the U.K. an adequate forum precisely **because** "[t]he United Kingdom recognizes such causes of action as deceit, negligent misrepresentation in contract, negligent misrepresentation in tort, and breach of contract – claims that are the subject matter of this dispute." SA008-SA009. Ignoring the *forum non conveniens* order's very rationale on this point, the district court now ruled: "Rentokil has never alleged a cause of action for misrepresentation. . . . Any fear that 'a statute of limitations bars the bringing of the case in' the United Kingdom, . . . ignores the causes of action that plaintiff has actually alleged in this case." SA021-SA022 (citation omitted). Without doubt, plaintiff substituted Luxembourg-law claims to oblige defendants. But defendants' *forum non conveniens* motion then argued that the case should instead be governed by U.K. law, a proposition that the district court accepted to find the U.K. provided an adequate forum precisely because Rentokil could pursue a claim for deceit and misrepresentation there. SA008-SA009. A misrepresentation claim has always been the heart of plaintiff's case, and the Complaint alleges that defendants fraudulently misrepresented Citi's exposure to toxic subprime assets. JA223-JA227(¶¶7-12); SA008-SA009. And Rentokil ought not be limited to those legal theories specifically identified in the Complaint; rather, the facts alleged in the

- 57 -

Complaint are controlling as to what causes of action plaintiff is entitled to bring. *See Siegelman*, 221 F.2d at 196; *Carovano*, 851 F.2d at 571 n.3.

If, as defendants have contended, the laws of Luxembourg or the FSMA do not apply, Rentokil's best claim might be one for misrepresentation under English law. Yet defendants want the case dismissed and transferred to the U.K. where they will contend that claim is time-barred. They and the district court cannot have it both ways. Defendants' position creates the undeniable possibility that the U.K. forum will be unavailable to plaintiff to litigate its claims. *See Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Canada*, 703 F.3d 488, 496 (10th Cir. 2012) (holding that defendants failed to prove that an adequate alternative forum exists where they "argu[e] that Canada is an adequate alternative forum while simultaneously raising a statute of limitations defense to the proceedings there"). An adequate alternative forum "does not exist if a statute of limitations bars the bringing of the case in that forum." *Bank of Credit & Commerce*, 273 F.3d at 246 (quoting *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998)); *see also Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 230 (N.D.N.Y. 2009) ("When there is a possibility that even one count in an action would be barred by a foreign sovereign's statute of limitations, the foreign sovereign is an inadequate alternative forum, and therefore dismissal on *forum non conveniens* grounds is improper.").

- 58 -

In sum, defendants have not carried their burden of showing that there is an adequate available forum.

## IX. CONCLUSION

For all the foregoing reasons, this Court should reverse the district court's *forum non conveniens* dismissal.

DATED: October 24, 2014      Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIC ALAN ISAACSON
MARK SOLOMON
AMANDA FRAME
JENNIFER N. CARINGAL


       s/ ERIC ALAN ISAACSON
       ERIC ALAN ISAACSON

655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

- 59 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
JOSEPH RUSSELLO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff-Appellant/Cross-
Appellee Rentokil-Initial Pension Scheme

# INDEX TO
## PLAINTIFF-APPELLANT/CROSS-APPELLEE'S
## SPECIAL APPENDIX

DOCUMENT DESCRIPTION                                    PAGES

Opinion and Order on Motion to Dismiss
(Docket No. 44)……………………………………………SA001-SA013

Endorsed Letter
(Docket No. 46)……………………………………………SA014-SA015

Opinion and Order on Motion to Amend
(Docket No. 52)……………………………………………SA016-SA022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC. SECURITIES LITIGATION | LEAD CASE<br>09 MD 2070 (SHS) |
| RENTOKIL-INITIAL PENSION SCHEME, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>        -against-<br><br>CITIGROUP, INC., SANFORD I. WEILL, CHARLES O. PRINCE, III, ROBERT E. RUBIN, and VIKRAM PANDIT,<br><br>                         Defendants. | This document relates to:<br>12 Civ. 6653 (SHS)<br><br><u>OPINION & ORDER</u> |

SIDNEY H. STEIN, U.S. District Judge.

     This litigation features a United Kingdom–based plaintiff suing New York–based defendants for alleged misrepresentations in connection with Euro Notes promoted in England and listed on Luxembourg and Copenhagen stock exchanges. Defendants have moved to dismiss this action on *forum non conveniens* grounds; that is, defendants urge that this action should be dismissed on the grounds that the courts of the United Kingdom offer a more appropriate forum for the litigation of the parties' dispute. Because the U.K. courts represent an adequate forum for this dispute, and because the United Kingdom has a greater interest in the dispute than does New York, the Court grants defendants' motion to dismiss this action.

I.   **BACKGROUND**

     Plaintiff Rentokil-Initial Pension Scheme brings this putative class action on behalf of itself and the other purchasers of 21 medium-term Euro

Notes issued and sold by defendant Citigroup, Inc., between October 12, 2005, and February 25, 2009. Plaintiff is a United Kingdom–based employee pension plan for a United Kingdom–based business services firm, Rentokil Initial plc. (First Am. Class Action Compl., Dkt. No. 39, at ¶ 21.) Defendant Citigroup is a financial services corporation incorporated in Delaware with its principal place of business in New York. (*Id.* ¶ 22.) The four individual defendants—Sanford I. Weill, Charles O. Prince, III, Robert E. Rubin, and Vikram Pandit—are all former directors or officers of Citigroup who reside in New York. (*Id.* ¶¶ 23-26.)

In its First Amended Class Action Complaint ("FAC"), Rentokil alleges that defendants intentionally misled investors by downplaying Citigroup's exposure to various investment risks. In particular, plaintiff accuses Citigroup of: (1) failing to disclose the full extent of its vulnerability to the risks of residential mortgage-backed securities ("RMBSs") and of collateralized debt obligations ("CDOs") that were backed by RMBSs (*see, e.g.*, FAC ¶¶ 7-8); (2) failing to maintain adequate loan loss reserves in light of the poor and deteriorating quality of its loan portfolio (*see, e.g., id.* ¶ 8); (3) claiming to be "well-capitalized" when, in reality, Citigroup's borrowing exceeded its market capitalization by "astonishing" amounts (*id.* ¶ 10); (4) omitting from its balance sheet until November 2007 assets held in structured investment vehicles ("SIVs"), which included subprime RMBSs, CDOs, and commercial mortgage-backed securities (*see, e.g., id.* ¶ 11); (5) misrepresenting the quality of those SIVs after disclosing them in November 2007 (*see, e.g., id.*); and (6) violating disclosure rules of the U.S. Securities and Exchange Commission ("SEC") and Generally Accepted Accounting Principles in its financial statements (*see, e.g., id.* ¶ 12).

According to the FAC, those misrepresentations were part of the offering documents for the 21 Euro Notes underlying this action, because Citigroup incorporated its misleading disclosures to the SEC into those offering documents. (*Id.* ¶¶ 27, 57.) Citigroup issued the Euro Notes, along

2

with three related Base Prospectuses, in the European Economic Area. (*Id.* ¶ 58.) According to the FAC, the Euro Notes and offering documents were therefore governed by the European Parliament's "Prospectus Directive," which delegates regulatory oversight for securities to European Union member states. (*Id.*) Under this European Parliament legislation, Luxembourg regulators were responsible for approving the Euro Notes and the accompanying prospectuses. (*Id.*) Because the United Kingdom is a member of the European Union, it recognizes offering documents that have been approved by a fellow European Union member state under the Prospectus Directive. (*See* Thewes Decl., Dkt. No. 32, at ¶ 10; Hubble Decl., Dkt. No. 33, at ¶ 60.)

Each Euro Note was listed on either the Luxembourg Stock Exchange or the Copenhagen Stock Exchange. (FAC ¶ 58.) The Euro Notes were denominated in three currencies: Euros, Pounds Sterling, and Danish Kroner. (*Id.* ¶ 2.) Even after their approval in Luxembourg and recognition in the other European Union member states, the Euro Notes were subject to ongoing obligations embodied in the European Union's Transparency Directive and Market Abuse Directive, which are incorporated into U.K. law through the U.K. Listing Rules. (Moore Decl., Dkt. No. 28, at ¶ 40(m).)

Plaintiff, allegedly induced by the misrepresentations in Citigroup's offering documents, invested in the medium-term Euro Notes in 2005 through 2009. (*Id.* ¶¶ 21, 171.) In early 2009, according to the FAC, investors learned of Citigroup's financial woes. (*Id.* ¶¶ 16, 172.) As a consequence, the FAC alleges, "the previously hidden risk inherent in [the Euro Notes] began to materialize, and investors feared the possibility of default by Citigroup." (*Id.* ¶ 173.) In the same time frame, the Euro Notes plummeted in value, losing $9 billion from an aggregate face value of $25 billion. (*Id.* ¶ 172; *see also id.* ¶¶ 15-16.)

Rentokil filed its Class Action Complaint, which alleged solely violations of U.K. law, in August 2012 and filed the FAC approximately

nine months later. The FAC contains the same substantive allegations as the original Class Action Complaint, but, rather than asserting solely violations of U.K. law, it asserts violations only of the Luxembourg Civil Code. (*See* FAC ¶¶ 183, 190, 201, 211.)

Defendants have now moved to dismiss the FAC under the doctrine of *forum non conveniens*. Their motion also offers two additional, alternative theories for dismissal, namely that (1) Luxembourg law does not apply to this dispute and (2) plaintiff's claims are time-barred.

## II. ANALYSIS

### A. The doctrine of *forum non conveniens* balances public and private interests.

The doctrine of *forum non conveniens* provides that a court "may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981). A district court applies federal law in determining whether to dismiss an action on the basis of *forum non conveniens*. *See Blanco v. Banco Indus. De Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993); *cf. Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994).

The ultimate question of whether to dismiss for *forum non conveniens* "requires great flexibility," *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996), with "each case turn[ing] on its facts," *Piper Aircraft Co.*, 454 U.S. at 249. "The decision to dismiss a case on *forum non conveniens* grounds lies wholly within the broad discretion of the district court." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (en banc); s*ee Piper Aircraft Co.*, 454 U.S. at 235. Nonetheless, several required analytical steps guide the exercise of the Court's discretion.

In the first analytical step, the Court decides what amount of deference is owed the plaintiff's choice of forum. *See Iragorri*, 274 F.3d at 73. The Court next determines whether an adequate alternative forum exists. *Id*. Third, if an adequate alternative forum exists, the Court balances the public and private interest factors enumerated by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See id*. at 508-09; *Iragorri*, 274 F.3d at 73-74.

First, as to the level of deference owed a plaintiff, "[a] domestic petitioner's choice of its home forum receives great deference, while a foreign petitioner's choice of a United States forum receives less deference." *In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 498 (2d Cir. 2002) (citing *Iragorri*, 274 F.3d at 71). Courts measure the degree of deference on a sliding scale:

> [T]he greater the [petitioner's] or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*. . . . On the other hand, the more it appears that the [petitioner's] choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands . . . .

*Iragorri*, 274 F.3d at 72.

Second, the party seeking dismissal for *forum non conveniens* must show that an adequate alternative forum exists. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). An alternative forum is adequate if the defendants are subject to service of process in that forum and the forum permits a satisfactory remedy. *See Piper Aircraft Co.*, 454 U.S. at 254 n.22. The alternative forum's substantive law is irrelevant to the analysis except to the extent that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id*. at 254. In other words, what matters is that the alternative forum

"permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft Co.*, 454 U.S. at 254 n.22).[1]

Third, if the available alternative forum is adequate, the Court next proceeds to balancing the private and public interest factors. The private interest factors set forth in *Gilbert* include: (1) "the relative ease of access to sources of proof," (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," (3) any "possibility of view of premises," if relevant, and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." 330 U.S. at 508. The public interest factors include: (1) "[a]dministrative difficulties" flowing from court congestion, (2) whether trial in the current forum would result in the "burden" of "[j]ury duty . . . imposed upon the people of a community which has no relation to the litigation," (3) the desire to "hold[] the trial in the[] view and reach" of the "many persons" affected by the litigation, (4) "a local interest in having localized controversies decided at home," and (5) avoiding "having a court untangle problems . . . in a law foreign to itself." *Id.* at 508-09.

It is the "'well-established practice in the Southern District of New York'" to "decide[] the forum non conveniens motion on affidavits." *Constellation Energy Commodities Grp., Inc. v. Transfield ER Cape Ltd.*, 801 F.

---

[1] Even if the alternative forum has jurisdiction over the parties and permits a satisfactory remedy, the forum may still be inadequate if it "is characterized by a complete absence of due process." *Monegasque*, 311 F.3d at 499; *see RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 553-54 (S.D.N.Y. 2013). Courts are generally reluctant to find a foreign forum lacking in due process, because "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can Co. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998). In this case, no party suggests that the proposed alternate forum—the courts of the United Kindom—fails to provide due process.

Supp. 2d 211, 218 (S.D.N.Y. 2011) (quoting *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (en banc)). Thus, this motion will be decided "based on the pleadings, affidavits and briefs of the parties." *Alcoa S.S. Co.*, 654 F.2d at 149.

> **B.   The three-part test set forth in *Iragorri* reveals that the United Kingdom is a more appropriate forum than New York.**
>
> > **1.   *Plaintiff's choice of New York as a forum deserves little deference.***

Plaintiff's tenuous relationship to the Southern District of New York lessens the deference owed to its choice of the Southern District as the forum for its lawsuit. *See, e.g.*, *Pollux*, 329 F.3d at 71; *Monegasque*, 311 F.3d at 498; *Iragorri*, 274 F.3d at 72.

As a foreign plaintiff, Rentokil begins with a disadvantage in the deference analysis. After all, the law presumes that foreign plaintiffs are entitled to less deference in their choice of a U.S. forum than are U.S. plaintiffs. *See Monegasque*, 311 F.3d at 498. More specifically, plaintiff Rentokil is a foreign citizen and is the pension plan for a firm also based outside of the United States. (FAC ¶¶ 19, 21.) Rentokil's investments that form the basis for this lawsuit are securities listed on foreign stock exchanges, governed by foreign legislation, and subject to regulation by foreign authorities. (*See* FAC ¶ 58; Moore Decl. ¶ 40(m).)

However, the lawsuit is not completely devoid of connection to the United States. Defendants are all citizens or residents of New York (FAC ¶¶ 22-26), the FAC alleges that several material facts occurred in New York (*id.* ¶¶ 27, 70), and the parties agree that "a substantial amount of evidence related to plaintiff's claim is located in New York" (Mem. of Law in Support of Defs.' Mot. to Dismiss the Am. Compl., Dkt. No. 25, filed Apr. 15, 2013 ("Defs.' Mem.") at 20; *see* Pl.'s [Corrected] Mem. in Opp. to Defs.' Mot. to Dismiss, Dkt. No. 34, filed May 17, 2013 ("Pl.'s Mem.") at 13.)

The Court will therefore defer only minimally to Rentokil's decision to bring its lawsuit in the Southern District of New York.

### 2. *The courts of the United Kingdom constitute an adequate forum for this dispute.*

The U.K. courts offer a perfectly adequate forum in which Rentokil may assert its claims. There appears to be no dispute that all parties here are subject to jurisdiction in the courts of the United Kingdom and are amenable to service there.[2] Thus, the parties' arguments concerning the adequacy of the U.K. courts center on whether that alternative forum "permits litigation of the subject matter of the dispute." *See Pollux*, 329 F.3d at 75.

As a general matter, U.S. courts "regard the British courts as exemplary in their fairness and commitment to the rule of law." *Wiwa*, 226 F.3d at 101. Moreover, because plaintiff's original complaint asserted claims based exclusively on U.K. law (Class Action Compl., Dkt. No. 1, ¶¶ 160, 164-165), "there can be no doubt that England permits litigation to resolve commercial disputes of the type presented in this case," *Pollux*, 329 F.3d at 75. The United Kingdom recognizes such causes of action as deceit, negligent misrepresentation in contract, negligent misrepresentation in

---

[2] "The alternate forum will normally be adequate so long as the defendant is amenable to process there. . . . An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement." *DiRienzo v. Philip Svcs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000) (citations omitted), *vacated on other grounds*, 294 F.3d 21 (2d Cir. 2002). Although Citigroup—the principal defendant—has already specifically consented to jurisdiction in the United Kingdom (*see* Defs.' Mem. at 19), there is no affirmative statement in the record that the individual defendants similarly consent. Counsel for the individual defendants is directed to notify the Court in writing within seven days of the entry of this Opinion and Order whether the individual defendants consent to jurisdiction over them by the courts of the United Kingdom.

tort, and breach of contract—claims that are the subject matter of this dispute. (*See* Moore Decl. ¶¶ 12, 22, 36.) A fair judiciary that recognizes plaintiff's causes of action certainly offers an adequate forum for this dispute.

> **3.  *The balance of interests tilts in favor of the United Kingdom as the preferred forum for this dispute.***

Having determined that Rentokil's choice to litigate in the United States deserves little deference and that the United Kingdom would offer an adequate alternative, the Court now proceeds to the task of determining whether litigation in the United Kingdom or in New York would better serve the interests of justice and convenience. *Gilbert's* various private and public interest factors guide this analysis. *See* 330 U.S. at 508-09.

> *a.  The Private Interest Factors*

> i.  Access to Sources of Proof

The sources of proof in this action are distributed between New York and the United Kingdom. According to defendants, substantial evidence is currently in the United Kingdom: "all of plaintiff's relevant witnesses and documentary evidence are located in the U.K.," and the "Citi employees involved in the issuance of the Euro Notes are likely to be located in England or elsewhere in Europe." (Defs.' Mem. at 20.) Rentokil responds to these assertions without disputing their veracity. Instead, Rentokil counters that the location of witnesses and documents abroad "bears little relevance" to this analysis, both because Citigroup has already produced documents in New York and because electronic discovery is available to quickly transmit documents over a vast distance. (*See* Pl.'s Mem. at 19.) The parties further agree that a substantial amount of other documentary evidence is currently in New York. (*See* Defs.' Mem. at 20; Pl.'s Mem. at 13.) This factor is, therefore, in equipoise: substantial evidence is located

both in the United States and the United Kingdom. In addition, all parties concede that advances in electronic discovery diminish the weight of any imbalance that may exist in this factor. (*See* Defs.' Mem. at 21; Pl.'s Mem. at 19.)

### ii.   Subpoena and Attendance of Witnesses

The ease of obtaining witness testimony is essentially even as between New York and the United Kingdom. The relevant personnel at Rentokil and Citigroup are located in the United Kingdom and elsewhere in Europe. (*See supra*, section II.B.3.a.i.) Rentokil has expressed an interest in calling United States–based expert witnesses. (*See* Pl.'s Mem. at 13.) Thus, in a U.K. trial, any U.S. witnesses may lie outside of compulsory process or convenient attendance, and the same is true of any U.K. witnesses in a U.S. trial. The United Kingdom–based witnesses are the most obviously relevant fact witnesses (*i.e.*, the relevant agents of the parties), whereas plaintiff's preferred experts are the only United States–based witnesses in whose testimony any party has expressed an interest. Thus, if this factor tilts toward either forum, it tilts slightly in favor of the United Kingdom.

### iii.   Possibility of View of the Premises

This factor is not relevant to this financial litigation.

### iv.   Other Practical Problems

The broad, residual private interest factor of "all other practical problems that make trial of a case easy, expeditious and inexpensive," as set forth in *Gilbert*, 330 U.S. at 508, also does not militate strongly for one forum or another. Plaintiff contends that the related litigations in the Southern District of New York make this District a more convenient forum for this litigation. (*See* Pl.'s Mem. at 16, 20-21.) The related actions to which Rentokil refers involve different plaintiffs, are based on different investment instruments, and have no consolidated proceedings with this action. In fact, the specific related actions cited by Rentokil—namely, *In re*

*Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS); *In re Citigroup Inc. Securities Litig.*, No. 07 Civ. 9901 (SHS); and *Int'l Fund Mgmt. S.A., et al. v. Citigroup Inc., et al.*, No. 09 Civ. 8755 (SHS)—are no longer pending before this Court. The Court therefore sees no efficiency to be gained by the various litigations sharing a forum. Ultimately, the United Kingdom and New York are roughly equal in practical convenience for the parties, because each forum is in close proximity to substantial documents and witnesses.

   *b. The Public Interest Factors*

    i. Court Congestion

  The first public interest factor—the effect of court congestion upon the litigation—similarly does not support either forum. Neither party contends that the U.K. courts are congested. As for the Southern District of New York, although this District is historically busy, there is no reason to believe that court congestion would slow the pace of this litigation. *Cf.* Administrative Office of the U.S. Courts, "United States District Courts— National Judicial Caseload Profile," Sept. 2013 (indicating that the median time from filing to disposition of a civil case is 8.3 months). Moreover, given the U.S. Senate's confirmation of six new judges to the Southern District bench in the past year, it is once again true that "the recent filling of all judicial vacancies and the resulting full complement of judges for the District makes this [congestion] concern of little or no present significance." *Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 146 n.5 (2d Cir. 2000); *see* U.S. Senate Committee on the Judiciary, "Judicial Nominations and Confirmations: 113th Congress," *available at* http://www.judiciary.senate.gov/nominations/113thCongress.cfm (last visited Feb. 4, 2014). The prospect of court congestion therefore does not affect this analysis.

SA011

ii.   Jury Duty, Public Trial, and the Local Interest

Several public interest factors rely on an understanding of which location has a greater interest in the dispute. New York's interest in this dispute is limited to the fact that defendants reside here. The United Kingdom's interest is far greater. Plaintiff is located in the United Kingdom. (FAC ¶ 19.) Additionally, the United Kingdom is a member of the European Union, whose European Parliament and European Council enacted the "Prospectus Directive" that govern the relevant securities in this case. (*See* Thewes Decl. ¶¶ 8-10; Hubble Decl. ¶¶ 9, 60.) Moreover, the Citigroup employees involved with the issuance of these securities apparently reside in the United Kingdom or Europe. *See supra*, section II.B.3.a.i. Certain of the Euro Notes at issue in this dispute were denominated in Pounds Sterling (and none in U.S. Dollars) (FAC ¶ 2), further illustrating that the center of the litigation's gravity is decidedly in the United Kingdom, and not in the United States.

Given New York's minimal interest in this litigation, it would be unfair to impose jury duty upon residents whose community has little stake in the outcome. Litigation in New York would also place any trial outside the view and reach of those U.K. residents who are affected by this dispute either through their relationship to plaintiff, through their relationship to Rentokil Initial plc, or as constituents of the European legislative and administrative entities that regulate the securities at issue. In addition, more generally, the United Kingdom's interest in having "localized controversies decided at home," *see Gilbert*, 330 U.S. at 508-09, supports that forum as preferable in this case.

iii.  Issues of Foreign Law

The final public interest consideration is the avoidance of U.S. courts determining issues of foreign law. This factor militates squarely against further litigation in New York. Although the parties disagree as to what law applies in this case, no party believes that U.S. law applies. Whether

12

Luxembourg law applies—as plaintiff asserts—or whether U.K. law applies—as defendants contend—this factor inveighs against a U.S. court exercising jurisdiction over this action.

## III. CONCLUSION

At bottom, the relevant financial transactions and regulatory oversight took place in the United Kingdom and continental Europe. In this litigation, a U.K. plaintiff has alleged claims under Luxembourg law regarding European-listed and European-regulated securities. That the U.K. plaintiff has sued New York defendants does not shift the center of this controversy across the Atlantic and into New York. The balance of interests clearly favors the United Kingdom as the more appropriate forum for this action.[3]

Accordingly, it is hereby ORDERED that the First Amended Class Action Complaint is dismissed on the grounds of *forum non conveniens*, on the condition that counsel for defendants Weill, Prince, Rubin, and Pandit notify the Court in writing, within seven days of the entry of this Opinion and Order, that Weill, Prince, Rubin, and Pandit consent to jurisdiction over them by the courts of the United Kingdom.

Dated:  New York, New York
        February 6, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.

---

[3] Having declined to exercise jurisdiction over this action, the Court need not and does not address defendants' alternative grounds for dismissal: that plaintiff's claims are time-barred and that Luxembourg law does not apply to plaintiff's claims.

SA013

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

1285 AVENUE OF THE AMERICAS
NEW YORK, NY 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU, CHAOYANG DISTRICT
BEIJING 100020, PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

202-223-7380

WRITER'S DIRECT FACSIMILE

202-204-7380

WRITER'S DIRECT E-MAIL ADDRESS

cdavidow@paulweiss.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

February 13, 2014

**MEMO ENDORSED**

*[Handwritten endorsement:]* Feb 18, 2014 — In an Opinion + Order dated February 6, 2014, this Court dismissed this action on condition that defendants consent to jurisdiction over them by the courts of the United Kingdom. This Feb 13 letter fulfills that condition. Accordingly, this action is hereby dismissed on the grounds of forum non conveniens. So ordered. [signature] /s/SHS

**By ECF**

The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Rentokil-Initial Pension Scheme v. Citigroup Inc., et al.,
12 Civ. 6653 (S.D.N.Y.) (SHS)

Dear Judge Stein:

We represent the defendants in the above-referenced action and write in response to this Court's February 6, 2014 Opinion and Order, conditionally dismissing plaintiff's First Amended Class Action Complaint (the "Complaint") on the grounds of *forum non conveniens.*

On behalf of Sanford I. Weill, Charles O. Prince III, Robert E. Rubin, and Vikram Pandit (the "Individual Defendants"), we write to advise the Court that the Individual Defendants consent to the exercise of personal jurisdiction over each of them by the courts of the England and Wales with respect to the claims asserted by plaintiff in the Complaint. This consent is without prejudice to or waiver of any defenses to such

Case 1:12-cv-06653-SHS   Document 45   Filed 02/13/14   Page 2 of 2
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Sidney H. Stein                                        2


claims other than personal jurisdiction.

                              Respectfully submitted,

                              *Charles E. Davidow/KGK*

                              Charles E. Davidow

cc:     Counsel of Record

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6 9 14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC. SECURITIES LITIGATION | LEAD CASE<br>09 MD 2070 (SHS) |
| RENTOKIL-INITIAL PENSION SCHEME, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>              -against-<br><br>CITIGROUP, INC., SANFORD I. WEILL, CHARLES O. PRINCE, III, ROBERT E. RUBIN, and VIKRAM PANDIT,<br><br>                              Defendants. | This document relates to:<br>12 Civ. 6653 (SHS)<br><br>OPINION & ORDER |

SIDNEY H. STEIN, U.S. District Judge.

    This Court previously dismissed on *forum non conveniens* grounds the above-captioned action, in which a United Kingdom–based plaintiff sued defendants for alleged misrepresentations in connection with Euro Notes promoted in England and listed on Luxembourg and Copenhagen stock exchanges. In order to ensure that an adequate alternative forum remain available to plaintiff, the Court conditioned dismissal on defendants' consent to jurisdiction over them by the courts of the United Kingdom. Plaintiff has now moved pursuant to Federal Rule of Civil Procedure 59(e) for this Court to amend the judgment in this action to add a new condition, namely that defendants also agree to the tolling of all statutes of limitations from the date this action was commenced until the conclusion of any appeals in this action. This condition would address plaintiffs' worry that new claims, which it has never previously alleged in this action, may be time-barred in the courts of the United Kingdom. Notably, regardless whether the Court adds this condition, no statute of limitations

stands in plaintiff's way of bringing this action in the United Kingdom, because the claims plaintiff has actually alleged in this litigation are not time-barred there. Plaintiff's new proposed condition therefore does not affect the adequacy of the courts of the United Kingdom as an alternative forum.

Plaintiff has also sought through Rule 59(e) for the Court to clarify that defendants' consent to jurisdiction in the United Kingdom must extend to all legal theories arising out of the facts alleged in this action. In response, defendants have stated that their consent is not limited to any legal theory or cause of action, thereby mooting that part of plaintiff's request.

The judgment, as it stands, ensures plaintiff an adequate alternative forum. The Court therefore denies plaintiff's motion to amend the judgment.

## I.   BACKGROUND

Plaintiff Rentokil-Initial Pension Scheme brought a putative class action on behalf of itself and the other purchasers of 21 medium-term Euro Notes issued and sold by defendant Citigroup, Inc., between October 12, 2005, and February 25, 2009, on the eve of the financial crisis of the last decade. Rentokil filed its original Class Action Complaint ("CAC") on August 30, 2012, alleging just one cause of action: namely, that defendants violated Section 90 of the United Kingdom's Financial Services and Markets Act 2000 ("FSMA"). (CAC, Dkt. No. 1, ¶¶ 160-165.) On June 7, 2013, Rentokil filed a First Amended Complaint ("FAC"), replacing its allegations under U.K. law with claims under four provisions of Luxembourg's Civil Code. (FAC, Dkt. No. 39, ¶¶ 186-211.)

On February 6, 2014, this Court granted defendants' motion to dismiss the FAC on the basis of *forum non conveniens*. *See Rentokil-Initial Pension Scheme v. Citigroup, Inc.*, No. 12 Civ. 6653, 2014 WL 470894 (S.D.N.Y. Feb. 6, 2014). The Court determined that, "the relevant financial transactions and regulatory oversight took place in the United Kingdom and continental

2

Europe" and that "[i]n this litigation, a U.K. plaintiff has alleged claims under Luxembourg law regarding European-listed and European-regulated securities." *Id.* at *7. Although the Court concluded that "[t]he balance of interests clearly favors the United Kingdom as the more appropriate forum for this action," it declined to enter a judgment of dismissal immediately. *Id.* Instead, it conditioned dismissal on the requirement "that counsel for [the individual defendants] notify the Court in writing, within seven days . . . that [the individual defendants] consent to jurisdiction over them by the courts of the United Kingdom." *Id.*

Seven days later, on February 13, 2014, the individual defendants met that condition when their counsel wrote to the Court as follows:

> [T]he Individual Defendants consent to the exercise of personal jurisdiction over each of them by the courts of [] England and Wales with respect to the claims asserted by plaintiff in the [FAC]. This consent is without prejudice to or waiver of any defenses to such claims other than personal jurisdiction.

(Dkt. No. 45 at 1-2.) On February 18, 2014, the Court issued an endorsed order that the February 13 letter "fulfill[ed] [the] condition" set forth in the Opinion and Order, and directed that "this action is hereby dismissed on the grounds of *forum non conveniens*." (Dkt. No. 46.)

Plaintiff has now moved for the Court to amend its order of dismissal. Specifically, Rentokil seeks to condition the dismissal upon both: (1) "defendants' agreement that . . . all applicable statutes of limitations are tolled for all purposes and in all jurisdictions as of the date of the first filing in this action, August 30, 2012, and until termination of any appellate proceedings in this matter," and (2) "defendants['] consent to the exercise of personal jurisdiction over them in the United Kingdom for all claims and causes of action arising out of the facts alleged in the [FAC] without limitation to the substantive laws of any particular jurisdiction." (Dkt. No. 47.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits parties to move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Under that rule, "district courts may alter or amend judgment 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Collision v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994)). Such a motion "should only be granted when the movant demonstrates that the Court overlooked facts or controlling legal authority presented to the Court on the underlying motion." *Credit Suisse First Boston, LLC v. Gonzalez Padilla*, No. 04 Civ. 4044, 2004 WL 1933550, at *1 (S.D.N.Y. Aug. 24, 2004); *see also Hollander v. Members of the Bd. of Regents of the Univ. of N.Y.*, 524 F. App'x 727, 729 (2d Cir. 2013), *cert. denied* 134 S. Ct. 197.

## III. ANALYSIS

### A. Defendants have consented adequately to the jurisdiction of the courts of the United Kingdom.

As a prerequisite for a dismissal on *forum non conveniens* grounds, an adequate alternative forum must exist. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000). "The alternative forum will normally be adequate so long as the defendant is amenable to process there. . . . An agreement by the defendant to submit to the jurisdiction of the foreign forum can generally satisfy this requirement." *DiRienzo v. Philip Svcs. Corp.*, 232 F.3d 49, 57 (2d Cir. 2000) (citations omitted), *vacated on other grounds*, 294 F.3d 21 (2d Cir. 2002).

Seeking to fulfill this requirement, defense counsel's letter of February 13, 2014, set forth on behalf of the individual defendants that they "consent to the exercise of personal jurisdiction over each of them by the courts of [] England and Wales with respect to the claims asserted by plaintiff in the [FAC]." (Dkt. No. 45 at 1.) Plaintiff, interpreting the scope of defendants' consent as limited to the FAC's legal theories, have moved to require

4

defendants to broaden their consent to "jurisdiction in the United Kingdom for all claims arising from this action under any laws that may be applicable." (Pls.' Mem. at 5.)

Responding to that motion, the individual defendants have clarified the scope of their consent as follows:

> Plaintiff raises a concern that, because the individual defendants consented to jurisdiction in the courts of England and Wales over "the claims asserted by plaintiff in the Complaint," these defendants might argue that they have not consented to personal jurisdiction over them in the event those courts permit plaintiff to assert different legal theories based on the same facts. (Pl. Mem. 2.) To be clear, the individual defendants understand their consent to personal jurisdiction to extend to legal theories based on the same facts permitted by the courts of England and Wales.

(Defs.' Opp. at 1 n.1.)

If defendants' earlier statement fell short of consenting to jurisdiction for all of plaintiff's potential legal claims arising from the facts alleged in its FAC, then this latter statement explicitly encompasses them all. This clarifying statement represents an "agreement by the defendant to submit to the jurisdiction of the foreign forum," *see DiRienzo*, 232 F.3d at 57, and ameliorates any lingering concern of a jurisdictional obstacle to the litigation of plaintiff's claims—asserted and potential—in the courts of the United Kingdom.

### B. Defendants need not waive defenses based on statutes of limitations, because the claims alleged in this action are not time-barred.

An adequate alternative forum, as required for *forum non conveniens* to apply, exists only where "the forum permits 'litigation of the subject matter of the dispute,'" so "[i]t follows that an adequate alternative forum does not exist if a statute of limitations bars the bringing of the case in that forum." *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of*

*Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) (quoting *Alfadda v. Fenn*, 159 F.3d 41, 45 (2d Cir. 1998)); *see also Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 159 (2d Cir. 2005).

Relying on that principle, Rentokil argues that the United Kingdom's adequacy as an alternative forum depends on whether "[d]efendants . . . waive all statute of limitations defenses not available to them when the first complaint was filed in this Court on August 30, 2012." (Pl.'s Mem. at 4.) Rentokil, which faces the burden of demonstrating in its Rule 59(e) motion that there is a "clear error of law or . . . manifest injustice" to correct or prevent, *Munafo*, 381 F.3d at 105, indicates just a single cause of action that is time-barred in the United Kingdom. In particular, Rentokil points out that "[a] misrepresentation claim brought in the United Kingdom is governed by a six-year statute of limitation" and that therefore Rentokil's misrepresentation claim against defendants would be time-barred in the alternative forum. (Pl.'s Mem. at 4 (citing Hubble Decl., Dkt. No. 33, ¶ 80.)

But Rentokil has never alleged a cause of action for misrepresentation. (*Cf.* Hubble Decl. ¶¶ 79-80 (distinguishing, under U.K. law, between "a potential claim under . . . FSMA" and "claims for negligent misrepresentation and in the tort of deceit").) At the outset of this litigation, Rentokil alleged violations of the United Kingdom's FSMA. (CAC ¶¶ 160-165.) It dropped that cause of action, with its own expert agreeing that the FSMA did not apply in this litigation. (*See* Hubble Decl. ¶ 9.) Plaintiff replaced the FSMA claim with four causes of action under Luxembourg's Civil Code. (FAC ¶¶ 186-211.) Those causes of action have limitations periods of ten and 30 years. (*See* Prum Decl., Dkt. No. 27, ¶ 18 (ten-year limitation for Luxembourg contract claims); *id.* ¶ 24 (30-year limitation for Luxembourg tort claims)).

Any fear that "a statute of limitations bars the bringing of the case in" the United Kingdom, *Bank of Credit & Commerce Int'l (Overseas) Ltd.*, 273 F.3d at 246, ignores the causes of action that plaintiff has actually alleged

6

in this case. Nothing in the record suggests that the claims alleged in this litigation are time-barred. Thus, no statute of limitations bars plaintiff from bringing in the United Kingdom the case that it brought in this Court, so the alternative forum remains adequate.

## IV. CONCLUSION

The doctrine of *forum non conveniens* balances U.S. courts' disinterest in "becoming the courthouse to the world, or an international court of claims," *Monde Re v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 382 (S.D.N.Y. 2001), with the same courts' disinterest in stripping plaintiffs of the ability to bring a lawsuit altogether. The prerequisite of an adequate alternative forum, while essential to a plaintiff's opportunity to be heard, does not invite a plaintiff to extract concessions from its adversary beyond those necessary to guarantee the plaintiff's day in court.

In this case, defendants have consented to jurisdiction in the courts of England and Wales, permitting plaintiff to sue them in that forum based on the facts plaintiff alleged in this action. No jurisdictional issue and no statute of limitations will stand between plaintiff and a U.K. lawsuit for the claims for relief alleged here.

Accordingly, it is hereby ORDERED that plaintiff's motion to amend the judgment in this matter is denied.

Dated:  New York, New York
       June 9, 2014

SO ORDERED:

Sidney H. Stein, U.S.D.J.

SA022

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that **PLAINTIFF-APPELLANT/CROSS-APPELLEE'S OPENING BRIEF AND SPECIAL APPENDIX** uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief comprises 13,270 words according to the word count provided by Microsoft Word 2010 word processing software.

s/ ERIC ALAN ISAACSON
ERIC ALAN ISAACSON

<u>DECLARATION OF SERVICE</u>

I HEREBY CERTIFY under penalty of perjury that, on October 24, 2014, I am causing a true and correct copy of the foregoing to be filed with the Clerk of the Court for the Second Circuit Court of Appeals by using the appellate CM/ECF. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Executed on October 24, 2014, at San Diego, California

s/ ERIC ALAN ISAACSON
ERIC ALAN ISAACSON